509 P.2d 641

**HARBOR INSURANCE COMPANY,**
Petitioner,

v.

**The INDUSTRIAL COMMISSION of**
Arizona, Respondent,

**Ray Bratton, Respondent Employee.**

**No. 1 CA–IC 733.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 3, 1973.

Twitty, Sievwright & Mills by John F.
Mills, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, In-
dustrial Comm. of Ariz., Phoenix, for re-
spondent.

Davis & Eppstein by Dale D. Tretschok,
Tucson, for respondent employee.

STEVENS, Judge.

Ray Bratton, respondent employee, sustained an injury to his back arising from and in the course of his employment as sales manager at Galloway Motors on 16 October 1967. His average monthly wage as sales manager was determined by The Industrial Commission of Arizona to be $1,000.00. As a result of the injury Bratton suffered a permanent disability to his back. Bratton's spectrum of possible employment was already severely limited. A congenital deformity of the left hand equipped him with only a thumb and fifth finger on that extremity. In 1960 Bratton had been employed by Western Cotton Products Company where his duties included maintenance and operation of a cotton ginning facility. While employed by the gin he suffered the traumatic amputation of his right hand. Being thus limited by the preexisting condition of the left hand and the industrial loss of the right hand, Bratton nevertheless continued to work and rose to the position of sales manager for Galloway Motors.

On 16 October 1967 Bratton suffered another industrial injury in the form of a back injury. It was diagnosed as a spondylolisthesis at L5–S1 for which a "laminectomy at L5" and a decompression of L5 nerve root was performed, leaving him with pain in the left low back and pain and numbness in the left calf and thigh. The action of the Commission of 17 April 1968 directed as follows:

"The defendant insurance carrier is hereby directed to provide said applicant with accident benefits (medical) and to pay compensation to the applicant at the rate of $21.70 per day, including dependents' allowance, from October 17, 1967 through October 25, 1967, and temporary partial from October 26, 1967 through February 28, 1968, as indicated, and temporary total at the rate of $21.70 per day, from and after February 29, 1968, to the date the attending physician releases the applicant to resume work, or until further order by this Commission."

On 13 August 1969 the Commission entered its findings, award and order pending determination of earning capacity. The Commission found:

"1. That applicant sustained personal injury by accident arising out of and in the course of his employment with the above-named defendant employer on October 16, 1967.

\* \* \* \* \* \*

"4. That applicant is entitled to accident benefits (medical expenses) through June 13, 1969.

"5. That applicant has sustained an unscheduled disability as the result of said accident.

\* \* \* \* \* \*

"7. This Commission finds that evidence in the file is insufficient to make an award to determine what effect said applicant's disability has on his earning capacity; therefore, this Commission reserves jurisdiction under the provisions of the Arizona Workmen's Compensation Law to make a final award and determination of Compensation for permanent partial disability.

"8. That compensation for temporary disability, as provided by A.R.S., Section 23–1045, is therefore terminated as of June 13, 1969."

The Commission awarded:

"1. Accident benefits (medical expenses) through June 13, 1969.

"2. The sum of $10,416.00."

The Commission ordered:

"IT IS FURTHER ORDERED that this Commission reserves jurisdiction under the provisions of the Arizona Workmen's Compensation Law to make a final award and determination of compensation for permanent partial disability.

"IT IS FURTHER ORDERED that said applicant be advanced partial permanent benefits from and after June 14, 1969, until further order of the Commission on the basis of 55% of the difference between any earnings he may have

and his average monthly wage, *such payments to be deductible from any future additional benefits which may ultimately be due said applicant.*

"IT IS FURTHER ORDERED that any payment of accident benefits and compensation heretofore made on account of said personal injury *are to be credited upon this award, and are deductible therefrom; * * *.*"

(Emphasis added).

Thereafter, a referee's report was issued on 28 September 1970 recommending the issuance of a decision upon hearing, findings, award and order pending determination of earning capacity. The recommended decision was issued by the Commission 21 October 1970.

On 20 May 1971 another referee's report was submitted in which the referee incorporated as res judicata findings 1 through 6 and number 8 of the decision of 21 October 1970, and incorporated them by reference into the report. The report did not adopt sections of the 21 October 1970 award or the referee's previous report requiring deduction of overpayment from future benefits.

On 18 June 1971 a decision upon hearing and findings and award for unscheduled permanent partial disability was issued and a motion for reconsideration was made. On 16 August 1971 the file was reviewed by the Commission's hearing officer, Frank W. Ellig, who submitted a memorandum to the Commission wherein he recommended:

"The file herein has been reviewed. It is recommended that the DECISION UPON HEARING AND FINDINGS AND AWARD FOR UNSCHEDULED PERMANENT PARTIAL DISABILITY, dated June 18, 1971, be affirmed, with a thirty (30) day clause, except that due to the fact that the applicant following June 14, 1969 was engaged in a period of vocational rehabilitation and training which was successful and which inured to the benefit of the defendant insurance carrier in that the applicant increased his earning capacity that no

overpayment be charged to the applicant because of the prior advance of compensation benefits."

Following the recommendation of its hearing officer, the Commission on 5 October 1971 entered a decision upon hearing, findings and award for an unscheduled permanent partial disability. The file of the Commission indicates by the document entitled "Hearing Officer's Supplemental Sheet" prepared by Frank W. Ellig, bearing the signatures of three members of the Commission, dated 13 September 1971, that the Commission had before it for consideration the memorandum recommendation of the hearing officer, Mr. Ellig, dated 16 August 1971, and the objections thereto submitted by Mr. John F. Mills on behalf of the carrier. Therein the Commission found:

"8. During the period from June 14, 1969 through June 18, 1971 in which the applicant was rehabilitating himself and establishing an earning capacity he was paid compensation in the sum of $5,340.98."

and for its award stated in part:

"Award is hereby made payable to said applicant by the above-named defendant insurance carrier as follows:

"1. The sum of $5,340.98, all of which has been paid.

"2. Compensation for unscheduled permanent partial disability under A. R.S., Section 23–1044, C & D, in the sum of $137.50 monthly, to continue until further order of this Commission, the first payment effective as of June 19, 1971."

Certiorari was brought by Harbor Insurance to review the lawfulness of the award of $5,340.98. It is Harbor's contention that a portion of that award should be refunded pursuant to the directive of the award of 13 August 1969 reiterated in the award issued 21 October 1970 as follows:

"IT IS FURTHER ORDERED that said applicant be advanced partial permanent benefits from and after June 14,

572

1969, until further order of the Commission on the basis of 55% of the difference between any earnings he may have and his average monthly wage, *such payments to be deductible from any future additional benefits which may ultimately be due said applicant."*

(Emphasis Added).

Harbor also contends that the award is res judicata and its language cannot be set aside.

■ Harbor is basically right in its contention. The 13 August 1969 award of the Commission to the extent restated in the 21 October 1970 award is res judicata, no party having protested the latter award. As stated in Cowan v. Industrial Commission, 18 Ariz.App. 155, 500 P.2d 1143 (1972):

"A.R.S. § 23–943, subsec. H specifically provides that an award of the Commission is final unless within 30 days after the date of mailing of copies of such award to the parties, one of the parties applies to the court of appeals for a writ of certiorari pursuant to A.R.S. § 23–951. * * * there is no Commission rule which purports to create an exception to this rather direct statutory language. * * * However, the workmen's compensation *statutes* do make some provision for mitigating the *res judicata* effect of Commission awards by providing a remedy for reopening a claim 'upon the basis of new, additional or previously undiscovered temporary or permanent condition.' "

18 Ariz.App. at 157, 500 P.2d at 1145.

The awards of 13 August 1969 and 21 October 1970 found:

"That the average monthly wage of applicant prior to the injury of October 16, 1967 was $1,000.00.

* * * * * *

" * * * that evidence in the file is insufficient to make an award to determine what effect said applicant's disability has on his earning capacity; therefore, this Commission reserves jurisdiction under the provisions of the Arizona Workmen's Compensation Law to make

a final award and determination of compensation for permanent partial disability."

and ordered:

" * * * that said applicant be advanced partial permanent benefits from and after June 14, 1969, until further order of the Commission on the basis of 55% of the difference between any earnings he may have and his average monthly wage,

requiring:

" * * * such payments to be deductible from any future additional benefits which may ultimately be due said applicant."

Harbor thereafter paid the sum of $5,340.98 to Bratton. The award terminated payment of partial permanent benefits as of 18 June 1971, determined Bratton's earning capacity as of 18 June 1971 and awarded him $137.50 representing 55% of the difference between his earning capacity as of that date, $750.00 and his average monthly wage of $1,000.00.

In addition he was awarded as a lump sum $5,340.98 already paid. There arises the controversy.

Harbor would apply the $137.50 retroactively as the amount that Bratton should have received from 14 June 1969 through 18 June 1971. Bratton argues that to require refund of overpayment would make the award a loan and be contrary to the statutory function of the Commission. That contention is contrary to Kasprowiz v. Industrial Commission, 14 Ariz.App. 75, 480 P.2d 992 (1971).

Harbor relies on the use of the "advance" in the award. We are unable to agree with Harbor's interpretation. To agree would be to deny Bratton all benefits for two years by saying Bratton was not entitled to benefits during the two-year interim between termination of accident benefits (medical) and commencement of permanent partial compensation under Harbor's construction. The only reasonable interpretation of the award in light of the facts of the case is to construe "advance"

as payment pending subsequent determination of the amount actually due.

 The awards of 13 August 1969 and 21 October 1970 ordered Harbor to pay permanent partial compensation at the rate of "* * * 55% of the difference between *any earnings he (Bratton) may have* and his average monthly wage of ($1,000.00)". (Emphasis Added). There was no finding or order of what that amount might be. The award established a formula for the determination of the amount of the award that by its nature would have to be determined in the future. That award adopting the formula is res judicata. In making its subsequent determination of earning capacity as required by the award, the Commission failed to enter any finding or award setting forth the actual amount of Bratton's earnings for the interim period of 14 June 1969 to 18 June 1971. Determination of such earnings should be evaluated in light of expenses incurred. Ihle v. Industrial Commission, 14 Ariz.App. 463, 484 P.2d 232 (1971.) Until that is done the amount of payment due cannot be determined.

The second portion of that award clause is also res judicata. If it is determined that overpayment has been made, then within the language of the award, the amount of overpayment must be deducted from the "future benefits" established by the 5 October 1971 award.

 The award of 5 October 1971 could not modify the award of 21 October 1970 which awarded the $5,340.98 as paid. Such retroactive modification of the award is not permissible.

"* * * the commission cannot alter its findings to operate retroactively so as to affect accrued compensation. Adair v. Superior Court, 44 Ariz. 139, 33 P.2d 995, 94 A.L.R. 328. But that it may change its findings so as to affect future earning capacity, where by the establishment of new or additional facts such change is justified or by showing that a mistake has been made in arriving at the amount thereof. * * * Martin v. Industrial Commission, 63 Ariz. 273, 161

P.2d 921; Hamer v. Industrial Commission, 43 Ariz. 349, 31 P.2d 103." Steward v. Industrial Commission, 69 Ariz. 159 at 164–165, 211 P.2d 217 at 220 (1949).

The lump sum award of $5,340.98 was therefore improperly made and the award of 5 October 1971 is hereby set aside for the Commission to make findings as to Bratton's earnings between 14 June 1969 and 18 June 1971 and enter an award in accordance with the formula set forth in the awards of 13 August 1969 and 21 October 1970.

## SPECIAL FUND

Harbor contends that it is entitled to apportionment of the award from The Industrial Commission's Special Fund.

At the time of Bratton's back injury in 1967 A.R.S. § 23–1065, subsec. A, par. 5 read as follows:

"An employee who suffers from a pre-existing disabling condition other than defined in paragraphs 3 and 4 of this section whether or not created by an industrial injury, and who thereafter sustains an injury by accident arising out of and in the course of his employment within the meaning of section 23–1044, which subsequent accident has permanently aggravated the previous condition, shall receive such benefits as provided in section 23–1044, however, any additional compensation paid in excess of what may be reasonably attributed to the second injury shall be paid solely from the fund created by this section, provided the combined disabilities total forty per cent or more general physical functional disablement."

Harbor alleges that Bratton's physical limitation, the loss of his right hand and congenital deformity of the left hand, was a previous condition within the meaning of § 23–1065, subsec. A, par. 5.

 We hold that the Commission was correct in its interpretation of the statute in denying Harbor's contention.

 The aggravation of a previous condition requires there to be a causal rela-

tionship between an injury (industrial) or condition and a previous injury, disease or predisposition that is aggravated by the industrial injury. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960); Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573 (1963); Montgomery Ward Co. v. Industrial Commission, 14 Ariz.App. 21, 480 P.2d 358 (1971).

The construction Harbor would give § 23–1065 would make all awards, where there had been a prior injury, apportionable. That is not the purpose of the statute. Such an interpretation would dissolve the proposition, " * * * the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, the result is caused by the injury". Murray, 87 Ariz. at 199, 349 P.2d at 633.

We agree with the Commission's interpretation of § 23–1065, subsec. A, par. 5 but for reasons set forth earlier in the opinion,

The award is set aside.

DONOFRIO, P. J., and JACOBSON, J., concur.