545 P.2d 971

**STATE COMPENSATION FUND and Arizona Highway Department, Petitioners,**

**v.**

**George E. HARRIS, Respondent Employee,**

**The Industrial Commission of Arizona, Respondent.**

**No. 1 CA–IC 1278.**

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 10, 1976.

Rehearing Denied March 12, 1976.
Review Denied March 30, 1976.

See also, 26 Ariz.App. 14, 545 P.2d 976.

———◆———

Robert K. Park, Chief Counsel, State Compensation Fund by J. Victor Stoffa, Christopher J. Philips, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

## OPINION

SCHROEDER, Judge.

This certiorari petition by the State Compensation Fund, the workmen's compensation carrier, calls into question respondent Industrial Commission's interpretation of what is now A.R.S. § 23–1065(A)(4). That provision was passed by the legislature in 1963, to encourage the hiring of handicapped persons by providing, in certain enumerated circumstances, that there be a sharing of compensation liability between the carrier and the Industrial Commission's Special Fund established by A.R.S. § 23–1065(A).[1]

The underlying claim involves an employee who suffered from pre-existing advanced coronary atherosclerosis and then sustained an industrially-related heart attack. It is not disputed that as a result the employee, George E. Harris, was left with a 100% loss of earning capacity, and that

1. A.R.S. § 23–1065(A) states that the Industrial Commission may direct an assessment of up to two percent of the premiums collected by the State Compensation Fund and private carriers, and up to two percent of what a self-insured employer would have paid for workmen's compensation insurance, in order to maintain the Special Fund. The Special Fund is now within the Commission's administrative fund.

he is entitled to benefits persuant to A.R.S. § 23–1045. The question before us is whether those benefits should be apportioned between the carrier and the Special Fund. The carrier urges there should be apportionment. The Industrial Commission held that the statutory conditions for apportionment were not met. We hold that the statutory language of A.R.S. § 23–1065 requires affirmance of the Industrial Commission award.

The resolution of the question involves the consideration of the relationship between A.R.S. § 23–1065(A)(4) and the two preceding subparagraphs.[2]

A.R.S. § 23–1065(A)(2), (3) and (4) provide as follows:

"2. An employee who loses by separation, or who sustains the permanent and complete loss of the use of a hand, an arm, a foot, a leg or an eye, and who has previously lost by separation, or has permanently and completely lost the use of a hand, an arm, a foot, a leg or an eye, and thereby, as a result of the subsequent loss, becomes in fact totally and permanently disabled, shall receive the compensation provided by § 23–1044 for such subsequent loss, and shall in addition thereto, after termination of the period of compensation provided by § 23–1044, if the permanent total disability continues thereafter, receive compensation at the rate provided in subsection B of § 23–1045, but the additional compensation shall be paid solely from the funds created by this section.

"3. An employee who suffers from a pre-existing disease, whether or not created by an industrial injury, and thereafter sustains an injury by accident arising out of and in the course of employment, within the meaning of subsection B of § 23–1044, which injury aggravates the pre-existing disease to the extent that he becomes in fact totally and permanently disabled, shall receive the compensation provided by subsection B of § 23–1044 for such injury, and in addition thereto, after termination of the period of compensation provided by such section, if the total and permanent disability continues thereafter, receive compensation at the rate provided in subsection B of § 23–1045, such additional compensation to be paid solely from the funds created by this section.

"4. An employee who suffers from a pre-existing disabling condition *other than defined in paragraphs 2 and 3 of this section* whether or not created by an industrial injury, and who thereafter sustains an injury by accident arising out of and in the course of his employment within the meaning of § 23–1044, which subsequent accident has permanently aggravated the previous condition, shall receive such benefits as provided in § 23–1044, however, the compensation payable for the combined disabilities shall be apportioned upon the ratio of the percentage of the pre-existing general physical functional disability of the total percentage of the combined general physical functional disability and the amount of compensation so attributable to the pre-existing general physical functional disability shall be paid solely from the funds created by this section, provided the combined disabilities total forty per cent or more general physical functional disablement." (Emphasis added).

Paragraph 2 involves loss of members or eyes and is not applicable here.

Paragraph 3, enacted at the same time as paragraph 4, provides in essence that where an employee suffers from a pre-existing "disease" and subsequently suffers a scheduled injury which aggravates the disease, then after receiving the scheduled benefits from the carrier, he also may re-

---

2. Because of an amendment in 1973 not material to this case, the subparagraphs of § 23–1065(A) were renumbered. Prior to 1973 the present subparagraphs (2), (3) and (4) were designated (3), (4) and (5), respectively.

ceive total disability benefits from the Special Fund.

Paragraph 4 is the only paragraph authorizing apportionment of unscheduled benefits. In essence, it provides that where the employee has a "pre-existing disabling condition other than defined in paragraphs 2 and 3" and subsequently suffers an industrial injury which permanently aggravates the previous condition, resulting in a combined disability of more than 40%, then the total disability benefits are apportioned between the carrier and the Special Fund.

■ We agree with the respondent Industrial Commission that the first requirement of paragraph 4 is that the pre-existing disabling condition itself must be other than a loss of a member or eye, as provided in paragraph 2, or a disease as provided in paragraph 3.[3]

■ The question then becomes whether the employee in this case suffered from a pre-existing "disease." The expert medical evidence in the record, contained in a letter from Allan I. Cohen, M.D., describes the condition as "a pre-existent, chronic coronary atherosclerosis," and as a "vast organic heart disease." The testimony of the doctor referred to the condition repeatedly as a disease.

The carrier notes that the doctor testified he used the terms "condition" and "disease" interchangeably in this case. The carrier suggests that we should treat the pre-existing problem as a "condition" rather than a "disease". We are not aided by this suggestion since the question before us is not whether there was a condition *or* a disease. It is whether there was a condition *other than* a disease.

The meaning of the word "disease" arises in other contexts. In addition to expert medical testimony bearing on whether a particular condition is a disease, courts have also looked to the commonly understood, popular meaning of the term. See annot. 61 A.L.R.3d 828. Our Supreme Court has recently had occasion to decide whether severe atherosclerosis, the condition involved here, was a "disease" within the meaning of an insurance policy excluding benefits for deaths contributed to by "disease." The court held that it was, and affirmed a directed verdict, stating:

> *"Was there a 'disease'?* The insured . . . suffered from both arteriosclerosis and atherosclerosis. Atherosclerosis had blocked off 70% of the insured's left anterior descent coronary artery. As a result, that blood vessel had only 30% of its normal capacity. When the insured engaged in the strenuous activity on the night of his death, this blockage caused the heart attack which killed him. At the trial, the pathologist and cardiologist called as expert witnesses by the plaintiff referred consistently to Watkins' condition as 'heart disease' and referred particularly to his atherosclerotic condition as 'severe'. It is our opinion that the definition of 'disease' as set forth by this Court in Dickerson, supra, and as quoted earlier in this opinion, is clearly met by the facts of this case." *Watkins v. Underwriters at Lloyds, London,* 107 Ariz. 56, 62, 481 P. 2d 849, 855 (1971).

The carrier argues that the term "disease" in this statute should be given a more restrictive meaning, and at oral argument suggested that it should be limited to the diseases enumerated in the Occupation-

3. The carrier argues that the provision should be construed to mean that in any case in which all of the requirements of subsections 2 and 3 in their entirety are inapplicable, then the provisions of subsection 4 are to be applied. We must reject this position as in conflict with the unambiguous language of the statute. Paragraph 4 clearly provides that we must look to the "pre-existing disabling condition" and not to whether the case as a whole falls within the requirements of subsections 2 or 3. Paragraph 4 can apply only where an employee has a "pre-existing disabling condition other than defined in paragraphs 2 and 3."

al Disease Act as it existed in 1963. We find no support either in the language of this statute or in its history for an arbitrary interpretation restricting it to the diseases specified under the old Occupational Disease Act, A.R.S. § 23–1102, repealed, Laws 1973, Ch. 53, § 4.

In further support of applying apportionment in this case, the carrier argues that if the provisions of paragraph 3 are applied according to their terms, the statute is so narrow as to encompass virtually no actual cases. This is because the section requires that there be a disease, and then a subsequent scheduled injury aggravating the disease. We agree that the requirements are very restrictive, but we believe that the task of rewriting or eliminating the provision is one for the legislature and not for this Court. *Industrial Development Authority of County of Pinal v. Nelson,* 109 Ariz. 368, 371, 509 P.2d 705 (1973); *Coleman v. The Industrial Commission of Arizona,* 14 Ariz.App. 573, 485 P.2d 296 (1971).

As final support for its position, the carrier relies upon statements made by then Governor Paul Fannin, Chairman A. R. Kleindienst of the Industrial Commission, and a pamphlet issued by the Industrial Commission shortly after what are now denominated as paragraphs 3 and 4 were passed by the legislature of 1963. These documents were offered before the Commission in this case as evidence of contemporaneous administrative interpretation of the statute. All of the documents, without reference to particular statutory language, do strongly suggest that these provisions were intended to provide for apportionment between the carrier and the Special Fund in a broad variety of situations in which an employee with a pre-existing problem suffers an industrial injury. The hearing officer refused to admit the documents in evidence, and they are here only on an offer of proof.

■ With respect to the question of admissibility, we believe that the documents were admissible as contemporaneous administrative interpretation of the statute. However, their weight is minimized by the clear language of this statute which unambiguously restricts the cases to which apportionment applies. In addition, other evidence in this record reflects that, despite those early pronouncements, the Commission's actual application of the statute since 1963 is consistent with the result reached here, denying apportionment.

■ Thus, even after these statements are considered, the statute itself cannot be interpreted to provide apportionment in the circumstances of this case. It may be regrettable that more was promised as an incentive to hiring handicapped persons than was actually provided by the legislature. It may also be desirable for the Special Fund to share the burden of disability benefits in cases where employees with pre-existing cardiovascular or other diseases suffer industrially-related injuries. This could be accomplished in a number of ways by the legislature; one possible amendment would be simply to change the words "other than defined in paragraphs 2 and 3 of this section" in the first sentence of paragraph 4 of A.R.S. § 23–1065(A)(4) to read "other than defined in paragraph 2 of this section". However, until the statute is amended, apportionment in cases such as this is not available.

The award is affirmed.

NELSON, P. J., and WREN, J., concur.