545 P.2d 976

**WINDOW ROCK SCHOOL DISTRICT #8,
Defendant Employer and State Compensation Fund, Defendant Carrier, Petitioners,**

v.

**The INDUSTRIAL COMMISSION
of Arizona, Respondent,**

**Mary K. Shepherd, Respondent Employee.**

**No. I CA–IC 1231.**

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 10, 1976.

Rehearing Denied March 12, 1976.
Review Denied March 30, 1976.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Victor Stoffa, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

## OPINION

SCHROEDER, Judge.

This case, like *State Compensation Fund v. Harris*, 26 Ariz.App. 9, 545 P.2d 971 also decided this day, involves a dispute between the State Compensation Fund, the workmen's compensation carrier, and the Industrial Commission concerning whether there should be apportionment of disability benefits under the provisions of A.R.S. § 23–1065(A)(4).[1]

---

I. A.R.S. § 23–1065(A)(4) provides as follows:

"4. An employee who suffers from a pre-existing disabling condition other than de-

As in *Harris*, there is no question about the right of the respondent employee to receive benefits. The only question is whether part of those benefits should be paid by the Industrial Commission's Special Fund rather than the State Compensation Fund (hereafter referred to as "the carrier").

The respondent employee, Mary K. Shepherd, experienced a series of misfortunes. Beginning in early 1968, she suffered three different industrial fractures of her vertebrae which, superimposed upon a serious arthritic condition, left her with an approximately 30% total general physical impairment. On December 9, 1971, she suffered still another industrial injury, this time to her left hip and leg, which brought her total general physical impairment to over 40%. The Industrial Commission in June of 1973 found that she was entitled to benefits with a 76.92% loss of earning capacity. The carrier asked apportionment of the responsibility for payment of the benefits. At a hearing on that question, the parties stipulated that the prior awards and findings with respect to the amount of benefits and the degree of loss of earning capacity were correct. They became final. The Industrial Commission hearing officer denied apportionment, and the State Compensation Fund now seeks review.

A.R.S. § 23–1065(A)(4) establishes a series of requirements for apportionment:

1. There must be a "pre-existing disabling condition other than defined in paragraphs 2 and 3" of the same section. This means that there must be a pre-existing disability other than the loss of a member or eye as provided in § 23–1065(A)(2) and other than a disease as provided in §

23–1065(A)(3). *See State Compensation Fund v. Harris, supra.*

2. The employee must thereafter suffer an industrial injury.

3. That injury must have "permanently aggravated the previous condition" and;

4. The combined disabilities must total 40% or more physical functional impairment.

The record contains some indication of a contention by the Industrial Commission that the first requirement was not met, presumably because at least a part of the pre-existing disability was arthritis which could be termed a disease. The carrier's position is that the pre-existing disability was a combination of arthritis and various fractures, thus making the pre-existing condition one "other than" a disease. At oral argument, counsel for the Commission stated that the Commission in this case, unlike *State Compensation Fund v. Harris,* was not contending that the pre-existing condition was a disease. In short, the parties now appear to be in agreement that the first requirement of paragraph 4 is satisfied.

There is similarly no dispute that the last injury suffered by the employee was an industrial injury, and that the combined disabilities totaled 40% or more of general physical functional impairment. Therefore, the second and fourth of the above-listed requirements have been met.

The issue before us is, therefore, whether the third requirement has been satisfied. As the parties present the matter in their briefs, the question is whether the last injury to the employee's hip and leg "permanently aggravated the previous condition."

fined in paragraphs 2 and 3 of this section whether or not created by an industrial injury, and who thereafter sustains an injury by accident arising out of and in the course of his employment within the meaning of § 23–1044, which subsequent accident has permanently aggravated the previous condition, shall receive such benefits as provided in § 23–1044, however, the compensation payable for the combined disabilities shall be apportioned upon the ratio of the percentage of the pre-existing general physical functional disability of the total percentage of the combined general physical functional disability and the amount of compensation so attributable to the pre-existing general physical functional disability shall be paid solely from the funds created by this section, provided the combined disabilities total forty per cent or more general physical functional disablement."

■ This Court has previously construed that requirement. *Harbor Insurance Co. v. The Industrial Commission of Arizona*, 19 Ariz.App. 569, 509 P.2d 641 (1973), held that in order for there to be an aggravation of the pre-existing condition within the meaning of this statute, there must be a direct causal relationship between the industrial injury and the previous condition. The industrial injury must in some manner act upon or affect the pre-existing disabling condition. It is not enough that the employee's overall condition is worse after the industrial accident than it was before.

■ The carrier argues that the testimony in this record requires a finding that the requisite causal relationship was shown. The hearing officer was unable to make such a finding. Our review of the evidence in the record compels us to conclude that such evidence is lacking.[2]

In the alternative, and for its principal legal contention, the carrier asks us to overrule *Harbor Insurance* and to hold, in effect, that all awards may be apportioned where there has been a prior injury. The statute, however, provides that the subsequent accident must have "permanently aggravated the previous condition." The interpretation urged by the carrier would result in giving that language no effect. The only requirements for apportionment would be a pre-existing disability, a subsequent injury, and a total functional loss of more than 40%.

■ The carrier strenuously argues that an overruling of *Harbor* is required in order to give effect to the legislative intent to encourage hiring of all the handicapped. Here, as in *Harris, supra*, the carrier relies upon publications of the Industrial Commission at the time of the enactment of this apportionment provision, documents which suggest that there should be apportionment whenever there has been a prior injury. For reasons similar to those stated in *Harris, supra*, we cannot give those documents controlling significance. They conflict with the actual language of the statute. In addition, despite the early pronouncements, there is no evidence that the Industrial Commission has in fact ever applied this statute in the manner urged by the carrier here.

Our reaffirmance of *Harbor Insurance* is strengthened by the legislative history of the apportionment statute. The construction of that statute urged by the carrier would greatly increase the number of cases in which apportionment would be allowed. The resultant decrease in the obligations of workmen's compensation carriers would be matched by the increase in the demands made upon the assets of the Special Fund. That Fund is principally financed by a percentage of the permiums paid by workmen's compensation carriers. The percentage is set by statute (A.R.S. § 23–1065(A)). The Special Fund was established in 1953, and at that time the Industrial Commission was authorized to direct payment of one percent of premiums to the Fund (Laws, 1953, Ch. 12, § 1). When, years later, that section was amended to add, *inter alia*, the apportionment provision under consideration here, the legislature did not

---

2. The evidence before the Commission came from two doctors. Both generally agreed that after the industrial injury of December 9, 1971, the employee's overall condition was worse. Both generally agreed that her total functional disability was between 40- and 50%. However, neither doctor was able to state with reasonable certainty that the December, 1973 injury to the hip and leg permanently aggravated the pre-existing back problems of the employee. Thomas H. Taber, Jr., M.D., testified that "her overall condition" had been worsened and also expressed some uncertainty as to whether her overall condition was permanently any worse than it would have been if she had not suffered the accident. The hearing officer fairly characterized the testimony of the other doctor, Walter V. Edwards, M.D., as being that the employee's arthritic condition was worsened by the effects of all of the accidents. We do not consider his testimony to support the carrier's position that the last accident permanently aggravated the combined effects of arthritis and the previous accidents.

increase the Fund. Indeed, the percentage payments into the Fund were not increased to the present level of two percent until 1968, an increase which coincided with other changes in the duties of the Fund. We conclude that the legislature's failure to increase the assets of the Fund at the time that it enacted the apportionment provision is a strong indication that it intended apportionment to apply only in limited circumstances and not in the broad spectrum of cases urged by the carrier here.

Doubtless the applicability of apportionment can be expanded, just as the assets of the Fund can be increased, but only by an act of the legislature and not by judicial fiat.

The award is affirmed.

NELSON, P. J., and WREN, J., concur.