570 P.2d 217

Lester KUCKO, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Rayco, Incorporated, Respondent Employer,

Aetna Casualty & Surety Company, Respondent Carrier.

No. 1 CA–IC 1607.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 2, 1977.

Rehearing Denied Oct. 12, 1977.

Review Denied Oct. 25, 1977.

Strong & Pugh by William K. Strong, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Shimmel, Hill, Bishop & Gruender, P.C. by J. Russell Skelton, Phoenix, for respondents employer and carrier.

## OPINION

FROEB, Chief Judge.

The petitioner injured his back in 1962 while working on an automobile. After considerable medical attention, including surgery, he was given an award of 20% permanent disability and 37.6% reduction in earning capacity in 1969. The claim was thereafter reopened in 1970 for treatment of increased back and leg pain which continued until March, 1975, when petitioner was found stationary by the respondent carrier. After a hearing the Industrial Commission entered a permanent award based upon a 25% unscheduled physical disability and found an 80.05% reduction in monthly earning capacity. Petitioner brings this special action from the award contending that he was entitled to permanent total disability and 100% loss of monthly earning capacity.

Petitioner bases his contention that he is entitled to a 100% loss of earning capacity primarily upon the argument that he has a disabling mental condition causally related to the accident which, when combined with his established physical impairment, renders him incapable of any gainful employment. While contrary evidence is present in the record which supports the determination by the hearing officer that petitioner is capable of gainful work as a parking lot attendant, petitioner submits that the award should be set aside due to certain errors of law made by the hearing officer. The crux of this argument is that petitioner was precluded from proving that his mental condition was causally related to the industrial accident. As our decision hereafter indicates, the petitioner's mental condition was fully taken into account by the hearing officer in establishing lost earning capacity, but the hearing officer was correct in refusing to enter an award for permanent total disability based on an alleged causally related mental condition in addition to the admitted causally related physical condition of the petitioner.

■ The first issue, then, involves the res judicata effect of the notice of claim status issued on March 31, 1975, finding petitioner had sustained a permanent disability. The notice was accompanied by the required medical report which made no reference to any impairment based upon any psychiatric condition. The impairment was described as physical only. The medical report concluded with the opinion that petitioner had sustained a 25% impairment of the whole man. The notice of claim status and the medical report were accompanied by a notice of permanent disability and a request for determination of benefits. The latter notice directed to the petitioner notified him that he had sustained an unscheduled permanent partial disability and the Industrial Commission was directed to determine "the amount of further compensation, if any, to which [petitioner] was entitled." It also included the carrier's computation of proposed lost earning capacity and monthly benefits. There was no protest to the notice of claim status and, in accordance with A.R.S. § 23–947, the determination by the carrier that petitioner sustained a partial permanent disability became final and is res judicata. See *Kleinsmith v. Industrial Commission*, 26 Ariz.App. 77, 546 P.2d 346 (1976).

We do not agree with petitioner's contention that the notice of claim status accompanied by the medical report and the "notice of permanent disability and request for determination of benefits" was ambiguous as to whether the impairment was partial or total. Petitioner was put on notice that the disability was unscheduled *partial* disability. Considering the notices and the attached medical reports there can be no question that the impairment found by the carrier was physical in nature and not psychiatric. If petitioner wished to oppose this determination it was his duty to protest the notice and request a hearing. A.R.S. § 23–947.

■ This is not to say, however, that petitioner's mental condition, whatever its causal origin, could not be considered by the hearing officer in arriving at an award for lost earning capacity. A.R.S. § 23–1044(D) provides that in determining reduced monthly earning capacity:

. . . consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

After the Commission administratively determined petitioner's lost earning capacity to be 65.34%, a request for hearing was filed by petitioner in which he protested the award and claimed 100% L.E.C. At the hearing, testimony relating to petitioner's mental condition was given by Ronald A. Peterson, a licensed psychologist, and considered by the hearing officer on the issue of what work the petitioner was capable of performing.[1] Dr. Peterson saw petitioner on three occasions, namely: September 30, October 6 and October 8, 1975. He explained that petitioner had emotional problems and had a difficult time thinking clearly while under stress and in dealing with people. He stated that petitioner's emotional state would impair his ability to work and hold employment. He said it would not be reasonable for petitioner to seek work and thought that he was unemployable. Testimony relating primarily to petitioner's physical capacities was given by Walter V. Edwards, M.D., essentially to the effect that petitioner's physical restrictions limited the type of work he was able to do. Although Dr. Edwards did not conduct a

---

1. This testimony by a licensed psychologist was competent on the issue of petitioner's mental capacity and ability and is not barred by the decision of this court in *Bilbrey v. Industrial Commission*, 27 Ariz.App. 473, 556 P.2d 27 (1976) as it was not received for the purpose of establishing a causal connection between the industrial accident and petitioner's mental condition.

psychiatric examination of petitioner when he examined him physically, he had practiced psychiatry in the past, had been on the staff of the Arizona State Hospital for five years, and is experienced in the psychiatric field. During his testimony he stated that a 1966 psychiatric evaluation of petitioner was still valid. The report, which is part of the record, presented a view which for the most part disagreed with the conclusions of Dr. Peterson and indicated that petitioner's inability to work was to some degree of a voluntary nature. Although the report was prepared some ten years prior to the present hearing, the hearing officer was entitled to consider it after Dr. Edwards opined that it was still valid.

In addition to these matters, there was evidence presented contradicting petitioner's statements of the extent of his own physical limitations as well as contradicting Dr. Peterson's statements that petitioner was unable to face people in everyday life.

In reviewing the record, we find support for the determination of the hearing officer that petitioner is capable of working as a parking lot attendant and has a lost earning capacity of 80.05%, as well as the determination that such employment is reasonably available to petitioner.

In view of our disposition of the issues, further consideration of questions raised by petitioner is unnecessary.

The award is affirmed.

JACOBSON, P. J., and OGG, J., concur.