653 P.2d 699

The CIRCLE K CORPORATION, Petitioner Self-Insured Employer,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Williemae Kershner, Respondent Employee.

No. 1 CA–IC 2660.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 24, 1982.

Rehearing Denied Oct. 1, 1982.

Review Denied Nov. 2, 1982.

James A. Overholt, Acting Chief Counsel and Calvin Harris, Former Chief Counsel,

**52**

The Industrial Commission of Arizona, Phoenix, for respondent.

Everett, Bury & Moeller, P.C. by J. Michael Moeller, Kenneth Everett, Tucson, for petitioners employer.

Rabinovitz & Dix, P.C. by Bernard I. Rabinovitz, Tucson, for respondent employee.

## OPINION

HAIRE, Judge.

In this review of an award entered by the respondent Commission in a workmen's compensation proceeding, the petitioning self-insured employer contends that the Commission erred in refusing to find the Commission's Special Fund liable for an apportionment of the award pursuant to A.R.S. § 23–1065(A)(4).[1] Although the injured employee has been made a party to this review, no question has been raised concerning the propriety or amount of the loss of earning capacity award made to her, and therefore it must be assumed that the award was proper in that regard. The issues relate only to the question of whether the petitioning self-insured employer must bear the sole responsibility for the payment of the award, or whether a portion of that responsibility must be carried by the Special Fund.

Apportionment under A.R.S. § 23–1065(A)(4) requires a finding of (1) a pre-existing disabling condition, (2) an industrial injury which has permanently aggravated the previous condition, and (3) combined general physical functional disabilities totalling forty per cent or more. The subsection provides:

A.R.S. § 23–1065(A) provides as follows:

"4. An employee who suffers from a pre-existing disabling condition other than defined in paragraphs 2 and 3 of this subsection whether or not created by an industrial injury, and who thereafter sustains an injury by accident arising out of and in the course of his employment within the meaning of § 23–1044, which subsequent accident has permanently aggravated the previous condition, shall receive such benefits as provided in § 23–1044, however, the compensation payable for the combined disabilities shall be apportioned upon the ratio of the percentage of the pre-existing general physical functional disability of the total percentage of the combined general physical functional disability and the amount of compensation so attributable to the pre-existing general physical functional disability shall be paid solely from the funds created by this section, provided the combined disabilities total forty per cent or more general physical functional disablement."[2]

The respondent employee was a polio victim at age nine. This caused a curved spine and displaced vertebrae, a slanting pelvis, a left hip pathology that required surgical fusion, and a shortened and underdeveloped left leg. Despite these severe impairments with their accompanying physical limitations, the employee was able to perform moderate physical work without pain. In July, 1976, she injured her back at work. Since this injury, she has suffered persistent and severe pain in her low back, right hip, and right leg.

The self-insured employer accepted responsibility for the claim filed relating to this industrial injury, and in April, 1980, issued a notice of claim status terminating temporary compensation with an unscheduled ten per cent permanent partial disability. This notice was unprotested and became final. *See Kucko v. Industrial Commission,* 116 Ariz. 530, 570 P.2d 217 (App.1977).

1. A.R.S. § 23–1065 requires that the Commission make premium assessments against all carriers providing workmen's compensation insurance. These assessments are then placed in a "special fund" which is to be utilized for the payment of workmen's compensation benefits under the circumstances set forth in that statute.

2. Section 23–1065(A)(2) applies to the loss or loss of use of a member or eye. Section 23–1065(A)(3) applies to pre-existing diseases.

The Commission administratively determined the employee's loss of earning capacity and awarded commensurate permanent partial disability benefits. *See* A.R.S. § 23–1047(B). Thereafter both the employer and the employee protested this determination and a hearing was scheduled. Prior to the scheduled hearing, the employer notified the Industrial Commission that it would request apportionment from the Special Fund pursuant to A.R.S. § 23–1065(A)(4). The Industrial Commission was then joined as a defendant in its capacity as administrator of the Special Fund. In such capacity the Industrial Commission will be hereinafter referred to as the "Special Fund." [3]

Two medical experts testified at the scheduled hearing, Lloyd S. Anderson, M.D., a neurosurgeon, and Murray F. Robertson, M.D., an orthopedic surgeon. Dr. Anderson had treated the employee for her industrial injury until she refused his recommendation for surgery. He had also participated in a group evaluation of the employee's condition in January, 1981, which was after the stationary date established by the employer's notice of claim status. He testified in support of the consultants' conclusion that the industrial injury was medically stationary *without any residual permanent impairment.* The consultants found no objective evidence of a permanent aggravation of the pre-existing structural impairments or of radiculopathy.

In contrast, Dr. Robertson testified that the industrial injury had permanently aggravated the employee's pre-existing condition. He conceded that none of the structural deformities were worsened, but he testified that the pre-existing deformity of the spine had abnormally stretched the sciatic nerve and that the industrial injury had aggravated this condition so that it became symptomatic. He rated this industrially related aggravation as a ten per cent general impairment. In addition, without regard to etiology, he rated the employee's total general impairment as well in excess of forty per cent.

On the basis of this medical evidence, the administrative law judge refused to require apportionment. He found that the evidence satisfied the statutory requirements of a pre-existing disabling condition and that the employee's combined disabilities totalled more than forty per cent physical impairment, but that the evidence conflicted as to the third requirement of an industrially caused permanent aggravation of a pre-existing disabling condition. *See Window Rock School District # 8 v. Industrial Commission,* 26 Ariz.App. 14, 545 P.2d 976 (1976); *Harbor Insurance Company v. Industrial Commission,* 19 Ariz.App. 569, 509 P.2d 641 (1973). Dr. Anderson had testified that the employee suffered no permanent impairment whatsoever from the industrial injury, and from this the administrative law judge concluded that there could not possibly have been any aggravation of a pre-existing condition. Therefore no liability was apportioned to the Special Fund.

The employer exhausted its administrative remedies and then sought review in this court. *See* A.R.S. § 23–951; Rule 10, Rules of Procedure for Special Actions, 17A A.R.S.

On appeal, the employer contends that no reasonable medical evidence supported the administrative law judge's finding that there was no aggravation of a pre-existing condition. We agree.

Although it is the administrative law judge's prerogative to resolve conflicting medical opinions, *Stephens v. Industrial Commission,* 114 Ariz. 92, 559 P.2d 212 (App.1977), his resolution must be based upon factual support in the record and be consistent with the findings as a whole. *See Barber v. Industrial Commission,* 25 Ariz.App. 486, 544 P.2d 703 (1976). In the present case, the administrative law judge was faced with a *res judicata* determination that the employee had in fact sustained a ten per cent general physical functional im-

---

**3.** The Special Fund has not questioned the timeliness of its joinder as a defendant in these proceedings.

pairment causally related to the industrial injury. It was only upon the basis of that determination that liability for permanent compensation benefits could have been imposed upon the employer. The administrative law judge was bound by that final determination, and accordingly could not rely upon Dr. Anderson's testimony that the employee had not sustained any permanent impairment as a result of the industrial injury. On the other hand, the only medical testimony which was consistent with the prior final determination of a causally related permanent impairment was that of Dr. Robertson, and he clearly was of the opinion that the industrial injury had permanently aggravated the pre-existing stretched nerve condition caused by the employee's long-term scoliosis.

In response the Special Fund does not strongly urge that Dr. Anderson's opinion supported the award. Rather, it asserts a different reason for affirming by arguing that under § 23–1065(A)(4) the required forty per cent or more general physical impairment can only be met by combining the percentage of pre-existing disability caused by the condition aggravated with the incremental percentage resulting from the aggravation of that specific condition. In other words the Special Fund argues that the percentage of pre-existing disability which is based on conditions other than the scoliosis cannot be considered in arriving at the forty per cent requirement. Because Dr. Robertson rated the neuropathy at only ten per cent, the respondent Special Fund thus contends that the medical evidence failed to satisfy the statutory requirement that the combined disabilities total forty per cent or more general physical functional disablement.

This contention by the Special Fund is contrary to the position taken by the hearing judge since he found that the statutory forty per cent requirement had been met. Likewise, we note that dicta in *Window Rock School District # 8 v. Industrial Commission, supra,* is contrary to the argument advanced here by the Special Fund.

■ The pertinent language of A.R.S. § 23–1065(A)(4) does not provide an absolute answer to this question. Although it is clear that apportionment does not come into play unless the industrial injury has permanently aggravated a "previous condition," the statute then proceeds to provide an apportionment formula in terms of "combined disabilities" and a ratio of the percentage of the "pre-existing general functional disability" to the total percentage of the "combined general physical functional disability." The Special Fund is then made liable for the amount of compensation attributable to "the pre-existing general physical functional disability." In computing the apportionment due from the Special Fund there is no provision in the statute which expressly limits the Fund's liability to that portion of the "pre-existing general physical functional disability" which is attributable to the "pre-existing condition" which has been aggravated. Rather, in providing the apportionment formula, the statute uniformly speaks in much more inclusive terminology, making the Special Fund liable based upon a proportion utilizing without limitation the extent of the pre-existing general functional disability. If the Special Fund's proportionate liability is to be based upon a factor involving the total pre-existing general physical functional disablement, then we cannot believe that the legislature intended that the "combined disabilities" referred to in its requirement of a showing of "forty per cent or more general physical functional disablement" was to be limited solely to the pre-existing disablement attributable to the condition aggravated, combined with the disablement flowing from the aggravation of that precise condition. We therefore reject the Special Fund's contention that the record provides insufficient support for the administrative law judge's determination that the forty per cent condition was met in this case.

Such an interpretation is in accord with our perception that the purpose of statutory provisions such as those contained in A.R.S. § 23–1065(A)(4) is to relieve an individual employer from a portion of the greatly enhanced potential liability inherent in the

employment of an individual who is burdened with substantial pre-existing physical disabilities—the physically handicapped. Such protection is important to the employer who hires a disabled employee where notwithstanding those prior disabilities the employee is able and willing to work. If such an employee later suffers an industrial injury, and because of the pre-existing disabilities suffers an inordinate loss of earning capacity, § 23–1065(A)(4) will relieve the employer from that portion of the total liability which is proportionate to the employee's pre-existing physical disabilities.

Here, it is unquestioned that the employee suffered from pre-existing disabling conditions. Also, a final determination had previously been made that the employee had incurred a permanent physical impairment as a result of her industrial injury. The only medical testimony presented at the hearing which was consistent with that prior determination related the permanent impairment to an aggravation of a pre-existing disabling condition. Finally, under the proper interpretation of the statute, the combined disabilities constituted a forty per cent or more general physical functional disablement. Since all of the statutory requirements for apportionment were met, the administrative law judge should have proceeded to set the liability of the Special Fund in accordance with the statute.

The award is set aside.

EUBANK and CONTRERAS, JJ., concur.