744 P.2d 462

### TUCSON STEEL DIVISION,
Petitioner Employer,

### State Compensation Fund,
Petitioner Carrier,

v.

### The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

**Miguel Camou, Respondent Employee.**

No. 1 CA–IC 3606.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 8, 1987.

Robert K. Park, Chief Counsel, State Compensation Fund by James F. Crane, Phoenix, for petitioner Employer & Carrier.

Dennis P. Kavanaugh, Chief Counsel, The Indust. Com'n of Arizona, Phoenix, for respondent.

Miller and Pitt, P.C. by Armando Rivera, Tucson, for respondent Employee.

## OPINION

CONTRERAS, Judge.

This is a special action review of an Industrial Commission (Commission) award for permanent partial disability benefits based on a capacity to work only part-time. The petitioner carrier (Fund) submitted medical evidence at the time of closure substantiating this restriction; however, at the time of hearing the Fund sought to introduce medical evidence establishing that the respondent employee (claimant) had by then achieved the capacity to work full-time. The sole issue on review is whether the administrative law judge properly precluded the introduction of this updated medical evidence. We conclude that the administrative law judge erroneously precluded the Fund from introducing current medical evidence regarding claimant's capacity to work full-time. The award is set aside.

In August 1981, the claimant strained his low back at work. The Fund accepted his claim. Medical benefits included surgery in September 1983 and psychotherapy for depression. In June 1984, a group of medical consultants, which included the treating surgeon, concluded that claimant's orthopedic condition was stationary with a 15 percent permanent impairment. At that time the consultants also completed a physical tolerance profile which indicated that the claimant could work thirty hours per week with specified limitations. The claim remained open since claimant continued to see the psychotherapist. The psychotherapist notified the Fund in August 1984 that therapy was "stalled" and again notified the Fund in November 1984 that he had last seen the claimant in late October and did not expect him to return.

On December 3, 1984, the Fund issued a notice of claim status terminating temporary compensation on November 30, 1984, with a permanent "disability." The notice specified that the amount of permanent benefits, if any, would be authorized in a subsequent notice. This notice included

the standard notification of protest rights. No protest was filed.

On December 6, 1984, the Fund issued a notice entitled Notice of Permanent Disability and Request for Determination of Benefits. This Commission-approved form states:

> You are hereby notified of a permanent disability, pursuant to the provisions of A.R.S. 23–1047. The Industrial Commission of Arizona is hereby requested to examine this claim to determine the amount of further compensation, if any, to which claimant may be entitled. Copies of all pertinent reports necessary to make such a determination are herewith forwarded to the Commission.

The notice also classified the disability as unscheduled permanent partial and provided specified advance payments pending the Commission's assessment of earning capacity. *See generally* A.R.S. § 23–1047(A) (permitting but not requiring advance payments). This form does not include a notification of protest rights.

Both these notices were filed on December 6, 1984. There was also filed on December 6, 1984, a memorandum from the Fund to the Commission's permanent awards section along with supporting medical documentation. The memorandum concluded that the claimant had the capacity to work thirty hours per week as a self-service gas station attendant. The medical documentation included both the June 1984 group consultation report and the physical tolerance profile.

On June 7, 1985, the Commission issued an award for unscheduled permanent partial disability benefits.[1] This award adopted the Fund's recommendation, including the limitation to part-time work, but the Commission found that the hourly wage for an attendant was greater than the Fund had indicated. The award, unlike the Fund's December 6, 1987, Notice of Permanent Disability ..., *included a notification of protest rights*. The claimant

---

1. This violated the time limits of A.R.S. § 23–1047(B) (imposing maximum ninety-day time limit).

promptly protested the award, asserting that he had a greater loss of earning capacity. Hearings were duly scheduled.

Pending the first scheduled hearing, the claimant was reexamined on September 23, 1985, by the treating physician and another of the original consultants, John Paul Utz, M.D. Their opinion with respect to a 15% permanent partial physical impairment remained unchanged; however, they concluded that the claimant was now capable of working "... an 8–hour day, 40–hour week with the restrictions that were placed on him at the group evaluation of June 6, 1984."

The Fund timely submitted the consultants' September 1985 report. In addition, both the Fund and the claimant requested subpoenas for several additional medical experts. The administrative law judge responded by notifying the parties that they were bound by the limitations imposed by Drs. Douglas, Grimes, Utz and Martin (June 1984 report) when the case was closed because *both* notices were *res judicata.*

Dr. Utz appeared at the scheduled hearings, but his testimony was restricted to the June 1984 evaluation. The Fund, however, was permitted to make an offer of proof concerning the subsequent September 1985 evaluation. This established that the restricted hours of work applied during the first year after the September 1983 surgery. The June 1984 evaluation was only nine months after surgery, but the September 1985 evaluation was two years after surgery. The consultants therefore concluded that as of September 23, 1985, the claimant was capable of working full-time.

One labor market consultant appeared, but, in line with the administrative law judge's ruling, the consultant was required to assume that the claimant could work only part-time. The Fund was again permitted to make an offer of proof which established that suitable full-time work was reasonably available. Such employment yielded a 56.10 percent loss of earning capacity and a monthly benefit of $408.03.

On April 29, 1986, the administrative law judge issued his Findings and Award for Unscheduled Permanent Partial Disability Benefits based on the claimant's capacity to do part-time work. The dispositive findings state:

3. BY NOTICE OF CLAIM STATUS and NOTICE OF PERMANENT DISABILITY issued December 3, 1984, and December 6, 1984, the defendant carrier closed this claim effective November 30, 1984 with some unscheduled permanent partial disability. The medical documents attached to the NOTICE OF PERMANENT DISABILITY by the defendant carrier, as required by *A.R.S.* § 23–1047(A), established that the applicant's 15% unscheduled permanent partial disability related to this accident ... resulted in work limitations of six hours per day, 30 hours per week;.... *These ... limitations were incorporated by reference into the now final and res judicata NOTICE OF CLAIM STATUS and NOTICE OF PERMANENT DISABILITY filed December 6, 1985.* See *Kucko v. Industrial Commission,* 116 Ariz. 530 (App.), 570 P.2d 217 (1977). *Therefore, limitations testified to as a result of prior, contemporaneous or subsequent examinations by the same or other physicians (i.e., that of Dr. Utz on September 23, 1985) are immaterial.*

4. Based on the limitations imposed as attachments to these December 4, 1984 closure Notices, labor market expert Richard Johnson competently testified that the applicant no longer has the physical ability to return to work as a welder, but retains the physical and mental ability to return to suitable work as a food service helper/attendant. Mr. Johnson testified that such suitable work is reasonably available to the applicant in the relevant Tucson labor market but only at 20 hours per week, yielding $290.31 per month in August 1981 wage rates. This equals a 78.05% loss in earning capacity, and a $557.70 per month entitlement.

(Emphasis added.) After affirmance on administrative review, this special action followed.

On review, the Fund asserts that the administrative law judge improperly precluded the introduction of the September 1985 evaluation. We agree because we conclude that preclusion is inapplicable to evidence submitted in compliance with A.R.S. § 23–1047(A).

■ The prerequisites for preclusion include a final judgment on the merits. *See, e.g., Matusik v. Ariz. Public Service Co.,* 141 Ariz. 1, 684 P.2d 882 (App.1984); Restatement (2d) of Judgments §§ 13, 17 (1982). An unprotested notice of claim status is a final judgment on the merits. *See, e.g., Phoenix Cotton Pickery v. Industrial Comm'n,* 120 Ariz. 137, 584 P.2d 601 (App. 1978). The evidence underlying a final judgment is relevant in assessing its scope. *Cf. Gallegos v. Industrial Comm'n,* 144 Ariz. 1, 695 P.2d 250 (1985) (supreme court determined preclusive scope of final permanent disability award by examining evidence supporting it).

■ The statutory procedure for determining disability is a two-step process. *See Hunter v. Industrial Comm'n,* 130 Ariz. 59, 633 P.2d 1052 (App.1981). The first step determines permanent impairment. *Id.* at 61, 633 P.2d at 1054. The general rule authorizing the carrier (or self-insured employer) to process claims without prior Commission action applies to notices terminating temporary disability status with or without permanent impairment. *See* A.R.S. §§ 23–947(A), –1061(F); A.C.R.R. R4–13–118(C). If the claimant disagrees with the notice of claim status, his remedy is to protest the disputed notice. *See, e.g., Holmes Tuttle Broadway Ford v. Industrial Comm'n,* 27 Ariz.App. 128, 551 P.2d 577 (1976); A.R.S. § 23–947(A).

■ The second step in determining disability is concerned with disability itself. *See Hunter v. Industrial Comm'n,* 130 Ariz. at 61, 633 P.2d at 1054. This determination is an exception to the general rule of carrier autonomy. The Commission, not the carrier, administratively assesses the amount of permanent disability benefits. *See* A.R.S. § 23–1044(F), –1047(A), (B). The carrier's responsibility is to request this determination of benefits within thirty days after the claimant becomes stationary and to furnish the Commission with copies of all necessary medical reports. *See* A.R.S. § 23–1047(A). The Commission then issues its award which is subject to protest. *See* A.R.S. §§ 23–947(A), –1047(C). A timely protest of this award authorizes a full evidentiary hearing. *See Le Duc v. Industrial Comm'n,* 116 Ariz. 95, 567 P.2d 1224 (App.1977). Furthermore, the ultimate award must be based upon evidence submitted at the hearing, not on evidence submitted to the Commission for the administrative assessment. *Id.* at 98, 567 P.2d at 1227.

■ The prerequisites for preclusion therefore apply to an unprotested termination notice. They do not apply to the notice requesting a determination of benefits. This latter notice merely initiates the second step of the two-step process. It is the Commission's award, not the notice requesting a determination of benefits, which is subject to finality. If the Commission's determination as set forth in its award is not protested by any party, it is final. Conversely, if the award is protested as it was here, the award is not final.

■ The administrative law judge's decision to preclude the Fund from introducing updated medical evidence regarding claimant's present capacity to work was predicated upon his belief that the parties were bound by the limitations imposed by the two notices issued on December 6, 1984. Based on *Kucko v. Industrial Comm'n,* 116 Ariz. 530, 570 P.2d 217 (App.1977), he reasoned that since neither party protested these notices the medical limitations included within the medical documents at the time the notices were issued became final and entitled to *res judicata* effect along with the unprotested notices. We disagree. In *Kucko,* a reopened claim was closed with permanent disability by notice of claim status. The supporting medical report referred to a physical impairment only. The notice of permanent disability and request for a determination of benefits classified the disability as unscheduled permanent partial. After the protest period

had expired, the Commission awarded permanent partial disability benefits based exclusively on the physical impairment. The claimant protested and sought to prove that he also had an industrially related psychiatric impairment which combined with the physical impairment to cause a total loss of earning capacity. This court concluded that the claimant was precluded from attempting to prove that the industrial injury had caused a psychiatric impairment:

> There was no protest to the notice of claim status and, in accordance with A.R.S. § 23–947, the determination by the carrier that petitioner sustained a partial permanent disability became final and is res judicata....

> We do not agree with petitioner's contention that the notice of claim status accompanied by the medical report and the 'notice of permanent disability and request for determination of benefits' was ambiguous as to whether the impairment was partial or total. Petitioner was put on notice that the disability was unscheduled *partial* disability. Considering the notices and the attached medical reports there can be no question that the impairment found by the carrier was physical in nature and not psychiatric. If petitioner wished to oppose this determination it was his duty to protest the notice and request a hearing. A.R.S. § 23–947.

*Kucko v. Industrial Comm'n,* 116 Ariz. at 532, 570 P.2d at 219 (citations omitted).

■ We conclude that *Kucko* unnecessarily included as a basis for preclusion the notice requesting a determination of benefits. We say this for the reason that the termination notice independently satisfied the prerequisites for preclusion. It alone was subject to protest and therefore became final when the protest period expired. The supporting medical evidence in *Kucko* established that the only residual impairment was physical. In contrast, the notice requesting a determination of benefits concerned the second step of the process and was not subject to protest. The real crux of *Kucko* is that once a notice of claim status closes a claim based upon permanent impairment from a particular physical condition, and that notice is unprotested and becomes final, a claimant cannot later attempt to establish causation of some other physical or mental condition.[2]

In the present case, the Fund was not attempting at hearing to relate some other condition causally; nor was it attempting to argue that there was no permanent unscheduled physical impairment. That was final and *res judicata.* Rather, the Fund was attempting to present evidence as to the nature and extent of claimant's loss of earning capacity. The application of preclusion in the present case therefore depends on whether the claimant's physical tolerance profile filed by the Fund is characterized as a binding component of its determination of permanent physical impairment or as a non-binding source of data relevant to the commission's determination of benefits. We have not discovered authority settling this question. The Fund relies on *Le Duc* and *Germany v. Industrial Comm'n,* 20 Ariz.App. 576, 514 P.2d 747 (1973). Both these cases, however, concerned labor market evidence, not medical evidence concerning physical tolerances.

■ The claimant relies on the availability of rearrangement. *See generally* A.R.S. § 23–1044(F). The Fund submitted the June 1984 physical tolerance profile in December 1984, more than a year after the claimant's surgery. Consequently his capacity to work had already changed. Despite this, the Fund arguably would have a rearrangement remedy if preclusion applies. *Cf. Gallegos v. Industrial Comm'n,* 144 Ariz. at 4–6, 695 P.2d at 253–55 (per-

---

**2.** The source of the problem is the ambiguous term "disability." It may signify functional disability, *i.e.,* impairment, or it may signify earning capacity disability. *See generally Smith v. Industrial Comm'n,* 113 Ariz. 304, 552 P.2d 1198 (1976) (adopting definitions of "permanent impairment" and "permanent disability" in American Medical Association's Guides to the Evaluation of Permanent Impairment). In order to eliminate or at least minimize this ambiguity and sufficiency of notice problem, we recommend that the Industrial Commission consider modifying the standard closing notice form by using the term "impairment" and by requiring specification of the medical basis of the determination.

mitting rearrangement for reduction in earning capacity even though reduction had occurred before permanent disability award became final). The availability of rearrangement, however, does not settle the character of the physical tolerance profile. Rearrangement is a statutory exception to finality. *See Calixto v. Industrial Comm'n*, 126 Ariz. 400, 616 P.2d 75 (App. 1980). The remedy therefore presupposes rather than establishes finality.

In our opinion, the physical tolerance profile, as offered here, shows how the physical impairment affected earning capacity, and was not directly relevant to the physical impairment itself. The physical impairment rating quantifies the anatomical or functional abnormality or loss. *See Smith v. Industrial Comm'n*, 113 Ariz. at 305–06, 552 P.2d at 1199–1200. The subsequent September 1985 medical report was based upon an updated medical evaluation and had a different function. It provided medical input to the labor market specialist, enabling him to match these more recent physical tolerances with the requirements of specific jobs in the open labor market. This match constitutes "suitability," one of the elements of earning capacity. *See, e.g., Zimmerman v. Industrial Comm'n*, 137 Ariz. 578, 672 P.2d 922 (1983).

We therefore conclude that the administrative law judge erroneously precluded the Fund from introducing the September 1985 medical evaluation of the claimant's capacity to work full-time. We accordingly set aside the award.

GRANT, P.J., and FIDEL, J., concur.