697 P.2d 1089

FREMONT INDEMNITY COMPANY
and The Estes Company,
Petitioners,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Brian Mingin, Respondent Employee.

No. 17799–PR.

Supreme Court of Arizona,
In Banc.

March 27, 1985.

Reconsideration Denied April 30, 1985.

Jones, Skelton & Hochuli by Calvin Harris and Jeffrey B. Miller, Phoenix, for petitioners.

Sandra Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Davis, Eppstein & Hall, P.C. by Philip J. Hall, Tucson, for respondent employee.

CAMERON, Justice.

This is a petition for review of an opinion and decision of the Court of Appeals setting aside a workers' compensation award made to respondent (claimant) by the Industrial Commission of Arizona. *Fremont Indemnity Co. v. Industrial Commission* 144 Ariz. 350, 697 P.2d 1100 [1984]. We have jurisdiction pursuant to Art. 6, § 5(3) of the Arizona Constitution, A.R.S. § 12–

120.24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

Two issues are presented for review:

1. For purposes of unscheduling an otherwise scheduled disability award, what effect, if any, may the Industrial Commission give to a New Jersey determination that the petitioner has suffered a prior industrial disability?

2. Assuming the New Jersey determination may be recognized in Arizona, has petitioner proven a loss of earning capacity caused by such disability?

The facts of this case are essentially not in dispute. In 1973, the claimant, while living and working in New Jersey, injured his back performing duties within the course and scope of his employment. In 1975, the New Jersey Department of Labor and Industry, Division of Workmen's Compensation, entered a judgment and awarded benefits based upon its finding that the claimant had sustained an 11% permanent, partial disability. It is undisputed that this disability would have been unscheduled had the injury occurred in Arizona. The claimant subsequently moved to Arizona and commenced employment.

In 1980, the claimant injured his knee while working in Tucson for the Estes Company (the employer). He filed a workmen's compensation claim. The employer's insurance carrier, Fremont Indemnity Co. (the carrier), awarded the claimant benefits based upon a finding that he had sustained a scheduled 15% permanent, partial disability. The claimant then requested a hearing to urge that his Arizona injury be reclassified as unscheduled. His contention was that his prior unscheduled back disability resulted in an actual loss of earning capacity which, considered with his Arizona knee injury, converted that otherwise scheduled disability into one which was unscheduled.

In awarding unscheduled permanent, partial disability benefits, the Administrative Law Judge (ALJ) accorded the New Jersey judgment *res judicata* effect under the Full Faith and Credit Clause of the United States Constitution. Furthermore,

he found that the claimant successfully proved a loss of earning capacity as a result of his New Jersey back injury.

The ALJ first found that the claimant had failed to show that the prior New Jersey industrial injury had resulted in a loss of earning capacity at the time of the Arizona knee injury. Upon claimant's request for review, however, the ALJ modified his previous determination and found that the claimant had shown a loss of earning capacity as a result of the prior New Jersey injury.

The Court of Appeals set the award aside holding that the Full Faith and Credit Clause did not apply and that the New Jersey judgment was not "any evidence of pre-existing impairment." The court further stated:

We do not reach the issue of whether the evidence supports the judge's finding that, due to the pre-existing condition, the claimant suffered a loss of earning capacity at the time of the subsequent injury.

697 P.2d at 1105.

We granted claimant's petition for review of the decision and opinion of the Court of Appeals.

Before addressing the specific issues presented, an overview of the applicable workmen's compensation statutes and cases may be helpful. A.R.S. § 23–1044(B) enumerates several injuries and sets forth a schedule for calculating the duration and amount of disability payments applicable to each. As to injuries not enumerated, such as the claimant's New Jersey back injury, subsection C provides that compensation shall be unscheduled and based upon loss of earning capacity attributable to the disability. In no event, however, shall compensation extend beyond the termination of the disability.

In the event of multiple injuries, contemporaneous or not, compensation often cannot be fixed in an arithmetic manner. Such injuries may result in a total disability more severe than the sum of the individual disabilities. *See Ossic v. Verde*

*Central Mines*, 46 Ariz. 176, 188, 49 P.2d 396, 401 (1935); 2 A. Larson, Workmen's Compensation Law § 59.00 (1983). The existence of a prior disability may, therefore, cause an otherwise scheduled subsequent disability award to be converted into one which is unscheduled. *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971). The claimant must, however, prove at the time of the second injury a loss of earning capacity as a result of the prior disability. Presumptions may aid the claimant in proving the requisite loss of earning capacity:

> We hold that where there is a prior scheduled industrially related injury, the Commission may not ignore the previous injury when the workman suffers a second industrial injury. * * * In the case of a prior non-industrially related injury which would have been a scheduled award had it been industrially related, there is a presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury although this presumption can be overcome * * *.

*Id.* at 544, 490 P.2d at 425. Although no such presumption of lost earning capacity applies to a prior unscheduled disability, *Borsh v. Industrial Commission*, 127 Ariz. 303, 305, 620 P.2d 218, 220 (1980), a subsequent scheduled disability may, nevertheless, be converted if the claimant proves an *actual* loss of earning capacity at the time of the second injury as a result of the prior injury. *See Yanez v. Industrial Commission*, 21 Ariz.App. 367, 519 P.2d 220 (1974).

### EFFECT OF THE NEW JERSEY JUDGMENT

The claimant argues that the ALJ correctly accorded *res judicata* effect to the New Jersey disability judgment through the Full Faith and Credit Clause. We do not agree.

▮ The Full Faith and Credit Clause of the United States Constitution provides in pertinent part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The purpose and effect of this clause is to nationalize the doctrine of *res judicata*. *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186, 190 (1963). This policy is effectuated when states recognize a sister state's final judgments as binding and conclusive. *Id.* Although the Court of Appeals correctly noted that the issue in this case is really one of collateral estoppel, the Full Faith and Credit Clause also encompasses that doctrine. *Braselton v. Clearfield State Bank*, 606 F.2d 285, 287 (10th Cir.1979).

A recent United States Supreme Court decision has cast serious doubt on the applicability of the Full Faith and Credit Clause to workmen's compensation and other administrative determinations. In discussing the Full Faith and Credit Clause, the Court stated: "the critical differences between a court of general jurisdiction and an administrative agency with limited statutory authority forecloses the conclusion that constitutional rules applicable to court judgments are necessarily applicable to workmen's compensation awards." *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 281–82, 100 S.Ct. 2647, 2661, 65 L.Ed.2d 757, 773 (1980). This result has, however, been sharply criticized. *See* Sterk, *Full Faith and Credit, More or Less, to Judgments: Doubts About Thomas v. Washington Gas Light Co.*, 69 Geo.L.J. 1329, 1351–60 (1981).

▮ A stronger reason for not applying the Full Faith and Credit Clause lies in the fact that the parties are not the same in Arizona as they were in New Jersey. Although the doctrine of collateral estoppel precludes parties and their privies from relitigating issues, it is axiomatic that a stranger to a litigation may not be bound by a determination made therein for purposes of subsequent litigation. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 800 (1971). This rule is premised upon preventing the inherent unfairness of binding a party to

an issue determination he had no opportunity to contest. *Id.* The rule applies in compensation-related applications of the doctrine. 3 A. Larson, supra, § 79.72(e). Thus, the Full Faith and Credit Clause may not be used to bind a litigant to a prior determination to which he was a stranger. *See Depper v. Depper,* 9 Ariz.App. 245, 248, 451 P.2d 325, 328 (1969); *Ayers Asphalt Paving, Inc. v. Allen Rose Cement and Const. Co.,* 109 Ill.App.3d 520, 523, 440 N.E.2d 907, 909 (1982).

In a case similar to that before us, an applicant for federal "black lung" benefits attempted to use a state industrial commission determination to conclusively prove a disability. The Fourth Circuit Court of Appeals rejected the contention that collateral estoppel, through the Full Faith and Credit Clause, conclusively established a disability:

> Third and finally, claimant contends that the Secretary refused to give Full Faith and Credit to the finding of the Industrial Commission of Virginia (the "commission") that claimant suffered from pneumoconiosis. Whether or not the Secretary is bound by the decision of the commission involves much more than the bare assertion that the Full Faith and Credit clause applies, for the doctrine of Full Faith and Credit can be used for many purposes. Here, apparently, the claimant advances Full Faith and Credit as a vehicle for applying collateral estoppel. We must therefore review that doctrine and its potential application to this case.
>
> Collateral estoppel has been described as follows:
>
>> [W]here the second action between the same parties is upon a different cause or demand ... the judgment in the prior action operates as an estoppel, not as to the matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination on which the finding or verdict was rendered. ..."

*Crowe v. Leeke,* 550 F.2d 184, 187 (4th Cir.1977), quoting *Commissioner v. Sunnen,* 333 U.S. 591 at 598, 68 S.Ct. 715 [at 719], 92 L.Ed. 898 (1948). More simply stated, "collateral estoppel 'means ... that when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit'". *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).

Applying these standards, we hold that collateral estoppel does not bind the Secretary to the commission's determination of pneumoconiosis. The same parties defendant were not involved in the two forums nor was there any privity between the parties which would bind the Secretary to the previous adjudication.

We recognize that many courts have taken a more liberal approach to the doctrine of collateral estoppel, as reflected by the district court's opinion in *Eisel v. Columbia Packing Co.,* 181 F.Supp. 298 (D.Mass.1960):

> [W]here a plea of collateral estoppel is raised against a plaintiff who had a full trial in a prior action, the decisive question is not whether there is mutuality of estoppel. Nor is the decisive question whether there is technical privity between the second defendant and the first defendant. Instead of such wooden tests, inquiries should be made as to whether plaintiff had a fair opportunity procedurally, substantively and evidentually to pursue his claim the first time.

181 F.Supp. at 301 quoted in *North Carolina v. Charles Pfizer & Co., Inc.,* 537 F.2d 67, 73 (4th Cir.1976). Even this more liberal approach presupposes that the party against *whom collateral estoppel is sought to be imposed* also was a party, or in privity with a party, when the issue was first litigated. Therefore, we hold that claimant was not denied a fair hearing and that the Secretary was not bound by the determination of the Industrial Commission of Virginia.

*Artrip v. Califano,* 569 F.2d 1298, 1299–1300 (4th Cir.1978) (footnotes omitted).

█ The claimant argues, however, that the New Jersey disability judgment was an *in rem* "status" determination binding as against the world. We do not agree. In a case analogous to the one before us, a party to a divorce action argued that a divorce decree established prior marital status which should have been given *res judicata* effect through the Full Faith and Credit Clause. In holding that the decree did not operate to bind nonparties, the Supreme Court of California stated the following:

He [the defendant] urges that, since a divorce decree is a judgment *in rem,* the essential finding that the parties thereto were lawfully married is *res judicata* in this action, and that, * * * this court must accord full faith and credit to the decree and to the finding of a lawful marriage necessarily implied therein. He alleges that "a judgment in a divorce case must be treated as dealing with status prior to divorce as well as after, and the one independently of the other," and that the *res* in a divorce action "is not only the subsequent singleness of the parties, but also their prior marital status—a determination which is 'immune from collateral attack'."

That contention, however, is opposed to the prevailing rule in most of the jurisdictions of the United States and to several decisions of this court. It is an oversimplification to state that a divorce proceeding is a proceeding *in rem,* and to proceed from that statement to the assumption that a decree entered therein is *res judicata* in an action between a party and a stranger thereto, not only as to the subsequent status of the parties with relation to each other, but also as to all issues decided or that might have been decided in the proceeding. The weight of authority holds that a decree of divorce is a judgment *in rem* only to the extent that it adjudicates the future status of the parties in relation to each other. * * * As between strangers or strangers and parties, however, the decree is *res judicata* only in that it conclusively determines that the parties are thereafter free to remarry so far as any relation to each other is concerned. It does not establish the previous validity of their marriage against third persons who were not and had no right to be heard thereon.

\* \* \* \* \* \*

A decision of any court purporting to bind by the findings of fact of an earlier action a person who was not a party thereto and who had no notice or right to a hearing in that action deprives that person of property without due process of law and is prohibited by the Fourteenth Amendment to the United States Constitution. A state court cannot dispense with the requirement of notice and hearing by labelling the proceeding *"in rem"* if it seeks to make the findings of fact binding upon a stranger to the earlier action. A state court may no more make its findings of fact binding on a person over whom it has no jurisdiction than it may bind him by a judgment *in personam* when he has not been personally served.

*Rediker v. Rediker,* 35 Cal.2d 796, 800–804, 221 P.2d 1, 3–5 (1950) (citations omitted). *See also Riley v. New York Trust Co.,* 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942) (Georgia probate judgment *in rem* insofar as Georgia assets are concerned, but *in personam* as regards personalty outside of Georgia and binding only as to parties and their privies). We hold, therefore, that because neither the employer nor the carrier were parties to the New Jersey disability judgment, neither could be collaterally estopped, through the Full Faith and Credit Clause, from contesting that judgment's validity.

At the other extreme are cases which unquestioningly utilize a prior disability determination for purposes of unscheduling a later industrial injury. For example, Veteran's Administration disability determinations have been used in this manner. *Borsch v. Industrial Commission,* 127

Ariz. 303, 620 P.2d 218 (1980); *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). We note, however, that the collateral estoppel argument was never raised in those cases. Also, we do recognize cases previously determined by the Arizona Industrial Commission even though the employers in the second injury may not have been the employer or party in the first industrial accident. *See, e.g., Morris v. Industrial Commission*, 81 Ariz. 68, 299 P.2d 652 (1956). This and other cases recognize that knowledge of the existence and nature of prior injuries can be indispensible in properly setting compensation for later injuries.

 Between the extremes represented by *Altrip,* supra, on the one hand, and *Borsch* and *Alsbrook,* supra, on the other, we believe there is an intermediate position that best accommodates the various and competing interests. To begin with, the workmen's compensation law is construed liberally so as to effectuate its remedial purpose. *Stainless Specialty Mfg. Co. v. Industrial Commission*, 144 Ariz. 12, 695 P.2d 261 (1985); *Cook v. Industrial Commission*, 133 Ariz. 310, 311, 651 P.2d 365, 366 (1982); *Pascucci v. Industrial Commission*, 126 Ariz. 442, 444, 616 P.2d 902, 904 (App.1980). To this end, ALJ's are given wide latitude in the admission of evidence, *Gomez v. Industrial Commission*, 72 Ariz. 265, 233 P.2d 827 (1951); and they are not strictly bound by the rules of evidence, *Ranger Insurance Co. v. Industrial Commission*, 15 Ariz.App. 45, 47, 485 P.2d 869, 871 (1971).

 Under these principles, the rule that strangers to a judgment may not be bound thereby must yield in the workmen's compensation area. We believe that the principle of "comity" applies to the situation before us. "In general, the principle of 'comity' is that the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Brown v. Babbitt Ford, Inc.*, 117 Ariz. 192, 198, 571 P.2d 689, 695 (App.1977). Comity may be applied even in situations in which the Full Faith and Credit Clause is inapplicable. *See Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 272, 56 S.Ct. 229, 231, 80 L.Ed. 220, 225 (1935).

 The applicability and scope of the principle of comity is a decision within the court's discretion. *State ex rel. Speer v. Haynes*, 392 So.2d 1183, 1185 (Ala.Civ. App.1979); *rev'd on other grounds,* 392 So.2d 1187 (Ala.1980); *Sheridan v. Sheridan*, 65 Wis.2d 504, 510, 223 N.W.2d 557, 560 (1975). We believe that by according a prior disability determination of another state presumptive validity, subject to rebuttal, all competing interests are accomodated: 1) the employer and carrier, strangers to the prior proceeding, are given the opportunity to challenge the findings made therein, and 2) the broad remedial purpose of our compensation law is effectuated.

 The result we reach is compelled by necessity. Because we live in a society with a highly mobile workforce, to require that an injured employee prove again the fact and degree of a prior disability, remote in place and time, would place an impractical burden upon him. Therefore, by reasons of comity, we recognize that the claimant suffered an industrial injury in New Jersey. However, because the injury would have been unscheduled had the accident occurred in Arizona, the employee must still show that the injury resulted in a loss of earning capacity disability. *Ronquillo,* supra.

## PROOF OF LOST EARNING CAPACITY

The employer and carrier contend that the claimant did not meet his burden of proving lost earning capacity at the time of the second injury. We do not agree.

 Admittedly, the burden is on the injured employee to show a loss in earning capacity. *Felker v. Industrial Commission*, 134 Ariz. 19, 653 P.2d 369 (App.1982).

To this end, the claimant introduced testimony from Ron Baker, a certified rehabilitation counselor and labor market consultant:

Q. Lastly, Mr. Baker, if you assume for the purpose of my question that Mr. Mingin suffered an injury in 1973, to his back in relation to his employment at Jayne's Motor Freight, and, if you assume that that job required him to be a dockman, * * * has he sustained a loss of earning capacity?

A. Yes.

The employer and carrier place great emphasis on the fact that the only medical expert to testify before the ALJ, Dr. John Utz, stated that the claimant had not sustained a loss in earning capacity. Expert medical testimony is, however, generally incompetent on the issue of earning capacity. *Hoffman v. Brophy*, 61 Ariz. 307, 315, 149 P.2d 160, 163 (1944). On the other hand, we have sanctioned testimony on diminished earning capacity by an expert having qualifications similar to Baker's:

The hearing officer must determine the qualifications of all expert witnesses, * * * and Dr. Fisher was determined to be a vocational rehabilitation expert. His testimony related to his field of expertise. Having qualified as an expert, Dr. Fisher then was able to express opinions about the ultimate facts in dispute.

*Phelps Dodge Corp. v. Industrial Commission*, 114 Ariz. 252, 256, 560 P.2d 436, 440 (App.1977) (citations omitted). We hold that there was sufficient evidence from which the ALJ could reasonably have found that the prior industrial injury resulted in a loss of earning capacity and that the knee injury should be converted to an unscheduled disability.

The opinion of the Court of Appeals is vacated. Award set aside.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

NOTE: Justice STANLEY G. FELDMAN did not participate in the determination of this matter.