767 P.2d 22

**Donald POLLARD, Petitioner Employee,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Reliance Truck, Respondent Employer,**

**Argonaut Insurance Company, Respondent Insurance Carrier.**

**No. 1 CA-IC 3829.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 30, 1988.

Review Denied Feb. 7, 1989.

Ely, Bettini & Ulman by Joseph M. Bettini, Phoenix, for petitioner Employee.

Dennis P. Kavanaugh, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Long & Lester, P.A. by Steven C. Lester, Phoenix, for respondents Employer and Ins. Carrier.

## OPINION

JACOBSON, Judge.

The sole issue in this special action review of an Industrial Commission award is whether a carrier or the Special Fund may re-litigate whether an earlier injury was scheduled, in order to avoid the unscheduling of a subsequent scheduled injury under the rationale of *Ronquillo v. Industrial Comm'n,* 107 Ariz. 542, 490 P.2d 423 (1971), when neither was a party to the earlier determination.

The facts are as follows. Donald Pollard (claimant) was employed by Reliance Truck (Reliance) at all times relevant to this case. In 1975, Pollard suffered an injury to his right rotator cuff during the course of his employment. At this time, Reliance was insured by Fireman's Fund American Insurance Companies (Fireman's Fund). Fireman's Fund accepted the claim which was closed with a scheduled 5% permanent disability. This notice was unprotested and

accordingly became final. *See generally* A.R.S. § 23–947 (amended 1980).

The claimant returned to normal duty. In November, 1983, he sustained injury to his right knee in the course of his employment. At this time, Reliance was insured by Argonaut Insurance Company (Argonaut). Argonaut accepted this claim and paid Pollard temporary benefits, until September 3, 1986, when Argonaut sent a notice of claim status, finding Pollard's knee injury was stationary as of August 27, 1986, with a 5% scheduled permanent disability.

Pollard protested this termination, asserting that he was not yet stationary, or, in the alternative, that he had greater disability than had been determined.

In the meantime, in November 1985, Pollard's right knee "collapsed." After this incident, he filed a petition to reopen, claiming that the collapse was either a new injury or a re-aggravation of the old injury. This matter was consolidated with Pollard's protest and a hearing was scheduled for April 24, 1987. Also at issue at the hearing was whether Pollard's 1983 knee injury was improperly characterized as scheduled. Pollard argued that under the case of *Ronquillo v. Industrial Comm'n, supra,* when a prior injury is scheduled, a subsequent industrially-related scheduled injury becomes unscheduled. Argonaut responded that the "unscheduling" of subsequent scheduled injuries pursuant to A.R.S. § 23–1044 (B) and (E) only applies when the initial injury was *properly* scheduled. Argonaut claimed Pollard's 1975 right rotator cuff injury was not properly scheduled. To support this proposition, Argonaut cited *Eggleston v. Industrial Comm'n,* 24 Ariz. App. 444, 539 P.2d 918 (1975) (where injury and impairment is to shoulder, it should be considered unscheduled). Argonaut further argued that despite the conclusive presumption of *Ronquillo,* it should be permitted to challenge the prior determination of the shoulder injury as scheduled under *Fremont Indemn. Co. v. Industrial Comm'n.,* 144 Ariz. 339, 697 P.2d 1089 (1985). Argonaut contends that *Fremont* holds that one not a party to the prior determination can-

not be bound by that determination. Argonaut also relies on *Roseberry v. Industrial Comm'n,* 113 Ariz. 66, 546 P.2d 802 (1976), for the proposition that where a notice of claim status is contrary to a medical report, it is void on its face and cannot have any *res judicata* effect. The Special Fund of the Industrial Commission also submitted a memorandum on this issue, asserting an interest in the resolution due to its potential liability pursuant to A.R.S. § 23–1065(B) (Amended 1980). Essentially, the Fund took the same position as did Argonaut.

On August 21, 1987, the administrative law judge issued his Decision and Findings and Award. As to the 1975 shoulder injury, the administrative law judge agreed with Argonaut that under *Fremont,* Argonaut, as a non-party in the first determination, could not be bound by the earlier determination of the 1975 injury as scheduled:

> 10. [S]ince *Fremont Indemnity Co. v. Industrial Commission,* an initial scheduled disability need not remain unchallenged if parties to the second injury are not the same as the ones involved with (the) initial injury....
>
> 11. While there is a rebuttable presumption according to *Fremont* that applicant had a scheduled injury in 1975, such presumption can be overcome and the initial holding of a scheduled injury is not *res judicata* to one not a party to (the) initial determination.

Further, the administrative law judge found that under *Eggleston,* the 1975 injury should indeed have been characterized as unscheduled. As to claimant's knee injury, in light of the foregoing analysis, *Ronquillo* was inapplicable. Therefore, the administrative law judge affirmed the scheduled characterization of that injury contained in Argonaut's notice of claim status. Claimant filed a Request for Review. On October 26, 1987, the administrative law judge affirmed his prior award. This special action followed.

Argonaut argues that *Fremont* constitutes an exception to the *Ronquillo* rule when the carrier at the time of the initial

injury is not the same as the carrier at the time of the subsequent injury. Argonaut would have us apply *Fremont's* "rebuttable presumption" of validity to the prior award, and hold that here such presumption was overcome by evidence and case law characterizing the shoulder injury as unscheduled. We disagree.

In our opinion, Argonaut reads *Fremont* too broadly. *Fremont* involved an injury sustained by the claimant in New Jersey. It was conceded that the New Jersey injury would have been unscheduled under Arizona law. *Fremont* 144 Ariz. at 341, 697 P.2d at 1091. The claimant then sustained a scheduled injury in Arizona. In deciding whether to treat the New Jersey injury as *res judicata* on the issue of earning capacity, the Arizona Supreme Court held that the parties were not bound under principles of *res judicata*. *Fremont,* 144 Ariz. at 342, 697 P.2d at 1092. The court cited two reasons supporting this conclusion. First, was the fact that administrative agencies, unlike courts of general jurisdiction, are subject to particular rules based on each state's compensation scheme. *Fremont* 144 Ariz. at 342, 697 P.2d at 1092. Secondly, the Court relied on the fact that the parties were not the same in the two determinations. *Fremont* 144 Ariz. at 343, 697 P.2d at 1093. Argonaut would have us rely solely on this second ground for holding that the conclusive presumption of *Ronquillo* does not apply to it. We cannot go this far. That portion of the *Fremont* analysis concerning the identity of parties does not help Argonaut here. The Arizona workers' compensation scheme, if concerned with identity of parties at all, is concerned with the identity of *employers* and *employees,* not carriers. *See Culver v. Industrial Comm'n,* 23 Ariz.App. 540, 534 P.2d 754 (1975) (present carrier bound by employer's previous carrier's action). As the *Culver* court pointed out, "[t]he responsibility for the industrial injuries rests with the employer and not with the carrier. The fact of the employer's responsibility has been established by Art. 18, § 8, A.R.S., the Arizona Constitution...." *Culver,* 23 Ariz.App. at 543, 534 P.2d at 757. *See also Van Sickle v. Industrial Comm'n,* 121

Ariz. 115, 588 P.2d 857 (App.1978) (despite fact that employer had two different carriers at times of initial and successive injuries, second carrier bound to accept first injury as scheduled and therefore treat latter injury as "unscheduled" under *Ronquillo* ).

We also note that if Argonaut's theory of different parties was correct, the Special Fund would always be able to contest the prior determination as it would never be a party to that proceeding, and thus would be able to avoid the liability imposed by A.R.S. § 23–1065(B). In our opinion, this is contrary to the clear legislative intent by enacting this statute to relieve the financial burden imposed by the *Ronquillo* unscheduling process by sharing this burden.

■ In light of the foregoing, we conclude that *Fremont* is inapplicable here. As to Argonaut's argument that the proper deference to be given the prior determination of the shoulder injury is a rebuttable presumption, this may have been the law prior to *Ronquillo, see Hurley v. Industrial Comm'n,* 83 Ariz. 178, 180, 318 P.2d 357, 359 (1957), but it is no longer. Under *Ronquillo,* a rebuttable presumption only exists when the previous injury is nonindustrially related. *Ronquillo,* 107 Ariz. at 544, 490 P.2d at 425. Claimant's prior injury was industrially related. We therefore hold that where the employer is the same for two industrial injuries, and the first injury is determined to be scheduled, a subsequent carrier may not challenge that characterization under *Fremont.*

■ We next turn to *Roseberry.* Argonaut contends that the *Roseberry* case holds that where a notice of claim status is contrary to the supporting medical report, it can have no *res judicata* effect. Argonaut then points out that in the present case the treating physician's medical report of November 10, 1976 indicated that the claimant's 1975 injury was to his shoulder. Thus under *Eggleston, supra,* the injury clearly should have been unscheduled. The argument continues that because the notice of claim status found the claim scheduled, it was void and can have no *res judicata*

effect. We believe, however, that this case is factually distinguishable from *Roseberry*. In *Roseberry*, the insurer sent claimant a Notice of Claim Status finding "no residual disability". *Roseberry*, 113 Ariz. at 67, 546 P.2d at 803. This characterization was directly contrary to the report submitted by the claimant's physician, which found the claimant was not yet stationary. *Id.* In the present case, the Notice of Claim Status discharged claimant with a 5% permanent scheduled disability. The medical report found that the claimant suffered an injury to his right rotator cuff. Although the *Eggleston* case, decided shortly *after* the report was issued, makes clear that injuries solely to the shoulder are to be characterized as unscheduled, prior to *Eggleston* combined shoulder-arm injuries often were treated primarily as arm injuries, which were scheduled under A.R.S. § 23-1044(B)(13). *See, e.g., Arnott v. Industrial Comm'n*, 103 Ariz. 182, 438 P.2d 419 (1968). *See also Ujevich v. Inspiration Consolidated Copper Co.*, 44 Ariz. 16, 18, 33 P.2d 599, 600 (1934) (the legal definition of arm extends from the shoulder blade to the hand). Thus we cannot say that the report is on its face, directly contrary to the characterization of "scheduled" in the Notice of Claim Status. Rather, we hold that because the state of the law in this area in 1975 was in flux, the report was not inherently inconsistent with either a scheduled or an unscheduled award. For this reason, we hold that the award was not void on its face under *Roseberry* and the *Roseberry* case does not abrogate the conclusive presumption of *Ronquillo* in this case.

We cannot ignore, however, that the subsequent cases of *Eggleston, supra,* and *Safeway Stores, Inc. v. Industrial Comm'n*, 27 Ariz.App. 776, 558 P.2d 971 (1976) now make it clear that the first injury was in fact erroneously characterized as a scheduled disability. In light of this circumstance, we find it necessary to discuss why we believe that the application of collateral estoppel is still the better rule. First, Reliance, as the employer at the time of the first injury, had the opportunity to contest the initial characterization. *See* A.R.S. § 23-945(A) (employer or other interested party may challenge any order of the Commission). Second, Argonaut, as any other carrier, was and is, in a position to evaluate the risk of employers such as Reliance on the basis of past claims against them, including those which may have been improperly characterized as scheduled by previous carriers. This is a risk inherent in their business. *See Culver, supra.* Third, Argonaut and other carriers in its position are not burdened with the total excess liability entailed by the "unscheduling" of a second scheduled injury, because the Special Fund is responsible for one half any loss of earning capacity in excess of 50%. *See* A.R.S. § 23-1065(B). Finally, as a general policy matter, allowing a prior scheduled claim to be re-litigated would be unduly burdensome, entailing making determinations as to lost earning capacity between the first and second injuries where evidence may be unavailable.

For the foregoing reasons, we hold that the administrative law judge erred in recharacterizing Pollard's 1975 shoulder injury as unscheduled and his 1983 knee injury as scheduled. The former should be recharacterized as scheduled in accordance with the first notice of claim status, and the latter must be reclassified as unscheduled under *Ronquillo*. The award is set aside.

CONTRERAS, P.J., and EUBANK, J., concur.