891 P.2d 854

SPECIAL FUND DIVISION/NO
INSURANCE SECTION,
Petitioner,

v.

INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Oralia Aldaco, Respondent Employee,

Empire Fruit Company, Respondent
Employer,

State Compensation Fund,
Respondent Carrier.

No. 1 CA–IC 93–0064.

Court of Appeals of Arizona,
Division 1, Department E.

June 28, 1994.

Review Denied March 21, 1995.

**388**

Indus. Com'n of Arizona by Laura L. McGrory and Michael A. Mosesso, Phoenix, for petitioner Special Fund Div./No Ins. Section.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Cecil A. Edwards, Jr., Phoenix, for respondent employee.

Peter C. Kilgard, Chief Counsel, State Compensation Fund by Robert J. Mounts, Phoenix, for respondents employer and carrier.

## OPINION

CONTRERAS, Presiding Judge.

This is a special action review of an Arizona Industrial Commission Decision Upon Hearing And Findings And Award ("Award") for apportionment under Ariz.Rev.Stat.Ann. ("A.R.S.") subsection 23–1065(B) (Supp.1993) and the Decision Upon Review affirming this Award. The Administrative Law Judge ("ALJ") concluded that Petitioner, the Spe-

cial Fund Division of the Commission ("Special Fund Division") is precluded from disputing whether Respondent Carrier, State Compensation Fund ("Fund")[1] correctly closed the April 1990 injury with an unscheduled disability under *Ronquillo*.[2] Although we disagree with the ALJ's analysis, we nevertheless conclude that preclusion both applies and disposes of the Fund's apportionment claim. Accordingly, we affirm the Award.

## I. PROCEDURAL AND FACTUAL HISTORY

During the relevant period, Respondent Employee ("Claimant") worked for Respondent Employer ("Empire"), which carried workers' compensation coverage with the Fund. In October 1989, Claimant partially amputated the third finger of her left hand in a compensable industrial accident. In March 1990, the Fund closed this claim with a scheduled disability. Consequently, any successive disability within the schedule would be compensated as an unscheduled disability, *see Ronquillo*, 107 Ariz. at 543–44, 490 P.2d at 424–25, and the Fund would be entitled to claim apportionment from the Special Fund Division. *See* A.R.S. § 23–1065(B).

In April 1990, Claimant injured both legs in a compensable industrial accident. Treating physician Stuart C. Kozinn, M.D., performed right leg surgery to reduce a right leg fracture and reported no complications. Dr. Kozinn also performed several left knee arthroscopic surgeries and at least one open knee surgery. In April 1992, he reported that the claim should be closed with a 25% permanent impairment of the left lower extremity.

On June 11, 1992, the Fund issued a Notice of Claim Status ("termination Notice") terminating temporary benefits and stating that the "INJURY RESULTED IN PERMANENT DISABILITY. (AMOUNT OF

---

**1.** Although the Commission generally lacks standing to appear as an advocate, it has standing in this case to defend the integrity of the Special Fund. *See Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 382, 573 P.2d 69, 73 (App.1977), *approved and adopted*, 117 Ariz. 342, 572 P.2d 804 (1977). Respondent Employee is a party to this special action, but she has not

actively participated because the apportionment dispute is between the Special Fund Division and the Fund.

**2.** *Ronquillo v. Industrial Comm'n*, 107 Ariz. 542, 490 P.2d 423 (1971).

PERMANENT [DISABILITY] BENEFITS IF ANY, ... WILL BE AUTHORIZED BY SUBSEQUENT NOTICE)." The termination Notice also informed Claimant that she could request a copy of the medical report supporting the Notice, *see generally* Ariz.Admin.Code ("A.A.C.") R4–13–118(B), and notified her that the termination Notice would become final unless she requested a hearing within ninety days, *see generally* A.R.S. § 23–947 (Supp.1993). The Commission received a copy of this Notice. *See generally* A.R.S. § 23–1061(F) (1983); A.A.C. R4–13–118(C).

On June 24, 1992, the Fund issued a Notice Of Permanent Disability And Request For Determination Of Benefits ("Form 107"). It checked boxes indicating that the disability from the April 1990 industrial injury was unscheduled under A.R.S. subsection 23–1065(B). This standard form notified Claimant of the disability classification and requested that the Commission determine the amount of unscheduled disability compensation, if any, under A.R.S. section 23–1047. Form 107 did not state that it would become final unless an interested party filed a timely hearing request.

Claimant retained counsel, but she did not protest the Notice of Permanent Disability. Both Claimant and the Fund submitted information to the Commission concerning Claimant's residual earning capacity.

On October 13, 1992, the Commission issued its Findings And Award For Permanent Partial Disability ("Interim Award").[3] The Commission found that the April 1990 industrial injury caused a 25% permanent impairment of the left lower extremity, which when combined with the prior scheduled disability, resulted in an unscheduled disability. It determined that Claimant had no loss of earning capacity from these combined impairments and instead awarded Claimant a vocational rehabilitation bonus under A.R.S. section 23–1065(B)(1). The Commission also noted that "[a]pportionment is not indicated at this time because of the finding of no loss of earning capacity." The Interim Award for the first time named as a party defendant the Special Fund Division, which was separately served with a copy of this Award.

Claimant promptly protested the Interim Award claiming that she had a loss of earning capacity. She, however, did not name the Special Fund Division as a party defendant or separately serve it with a copy of the hearing request. We note that such designation or service is not required by statute or administrative rule. The Special Fund Division did not itself request a hearing to protest the Commission's determination that subsection 23–1065(B) applied to the April 1990 injury claim.

Pending a hearing set for February 12, 1993, the Fund scheduled an independent medical examination to evaluate Claimant's functional capacity. The medical consultant reported that the April 1990 injury had caused both a 25% impairment of the left leg and a 5% impairment of the right leg.

On January 6, 1993, the Fund requested joinder of the Special Fund Division as a party defendant. The Special Fund Division consented to be joined. At a pre-hearing conference on January 26, 1993, the parties stipulated that Claimant is totally disabled. The Special Fund Division, however, disputed the applicability of apportionment. It relied on the recent independent medical report to support its position that the April 1990 injury actually caused a bilateral impairment, which constituted an unscheduled disability, *see, e.g., Conner Manufacturing, Inc. v. Industrial Comm'n,* 172 Ariz. 251, 252–54, 836 P.2d 464, 465–67 (App.1992), not a scheduled disability which became unscheduled under *Ronquillo* as required by subsection 23–1065(B). The Fund and Special

---

**3.** The Interim Award was untimely under A.R.S. section 23–1047(B) (requiring Commission to determine amount of permanent disability, if any, within thirty days after the carrier files the Form 107 and furnishes the Commission with necessary medical reports). If the Interim Award had been timely, the protest period for the June 11, 1992 termination Notice would not have expired.

By October 13, 1992, however, the termination Notice was final. *See* A.R.S. § 23–947(B) ("Failure to file [a hearing request] with the commission within the required time *by a party* means that the determination by the ... insurance carrier ... is *final and res judicata to all parties.*") (Emphasis added).

Fund Division submitted memoranda on this issue in lieu of a hearing.

The ALJ then issued an Award for apportionment under subsection 23–1065(B).[4] She concluded that the Special Fund Division is precluded from disputing whether or not the Fund correctly closed the April 1990 injury with an unscheduled disability under *Ronquillo.* The Award stated:

5. Neither the June 11, 1992 Notice of Claim Status closing the claim, nor the June 24, 1992 Notice of Permanent Disability and Request for Determination of Benefits were protested. Therefore, these Notices became final and res judicata. Res judicata precludes litigation of an issue that was decided or could have been decided in an earlier proceeding. The earlier decision is final whether or not it may have been wrong. *Reddel v. Industrial Commission*, 131 Ariz. 263, 266, 640 P.2d 194, 197 (App.1981).

6. Counsel for the Special Fund argues that the Notices closing the claim did not indicate that the injury closed with a scheduled injury, and therefore, the issue is not res judicata. Although this is true of the June 11, 1992 Notice, it is not true of the June 24, 1992 Notice. *The latter Notice specifically notifies the Industrial Commission that defendant carrier is requesting apportionment under A.R.S. § 23–1065(B), which is applicable only if the second injury is scheduled.* When this Notice was received by the Industrial Commission, it was the Special Fund's responsibility to investigate whether the second injury was scheduled or unscheduled. The Special Fund did not do this and thereby, waived its right to do so. The Notice is now res judicata.

(Emphasis added).

On administrative review, neither the Special Fund Division nor the Fund cited *Tucson Steel Division v. Industrial Comm'n*, 154 Ariz. 550, 744 P.2d 462 (App.1987). The ALJ affirmed the Award without modification. The Special Fund Division then brought this special action.

## II. DISCUSSION

On review, the Special Fund Division asserts that the ALJ misapplied preclusion for several reasons. We address these arguments as follows.

### A. Form 107

#### 1. Finality of June 24, 1992 Notice of Permanent Disability and Request for Determination of Benefits (Form 107)

■ The ALJ applied preclusion because she concluded that the Form 107 became final. Relying for the first time on *Tucson Steel*, the Special Fund Division argues that a Form 107 is not subject to protest and accordingly cannot become final. We agree.

In *Tucson Steel*, the carrier issued a termination Notice, which the Claimant did not protest, and a Form 107, which the carrier supported with medical evidence that the Claimant could work only part-time. The Commission subsequently issued an award for unscheduled permanent partial disability compensation, which the Claimant protested. At the ensuing hearing, the carrier attempted to prove that the Claimant actually could work full-time, but the ALJ concluded that the Form 107 was final and precluded litigation concerning the Claimant's functional capacity. *Tucson Steel*, 154 Ariz. at 552–53, 744 P.2d at 464–65. This court set aside the award:

The prerequisites for preclusion ... apply to an unprotested termination notice. They do not apply to the notice requesting a determination of benefits [Form 107]. This latter notice merely initiates the second step of the two-step process [for determining permanent disability]. It is the Commission's award, not the notice requesting a determination of benefits, which is subject to finality. If the Commission's ... award is not protested by any party, it is final. Conversely, if the award is protested as it was here, the award is not final.

*Id.* at 554, 744 P.2d at 466.

Consequently, in the present case, the ALJ erroneously concluded that the Special Fund

---

4. The Award failed to name the Special Fund Division as a party defendant, but the ALJ cor- rected this omission in an order *nunc pro tunc.*

Division had to protest the Form 107 in order to dispute whether the April 1990 injury caused an unscheduled disability under *Ronquillo.* The Form 107 was not subject to protest and could not become final. The subsequently issued Commission Award, which could have become final, did not become final because Claimant timely requested a hearing.

## 2. Reliance On Claimant's Protest and Request For Hearing

Generally, one interested party may rely on another's hearing request because a valid protest opens "all issues pertaining to the challenged award . . . for consideration at the hearing; the right to challenge the award is not limited to the party filing the request." *Cajun Cable Co. v. Industrial Comm'n,* 156 Ariz. 590, 596, 754 P.2d 317, 323 (App.1987). The Fund concedes that the general rule applies to the present case. We accordingly assume without deciding that the Special Fund Division may rely on Claimant's hearing request to litigate apportionment even though Claimant's protest concerned only her claim for permanent disability compensation.

## B. Termination Notice

The Special Fund Division concedes that the Notice of Claim Status terminating temporary compensation with "permanent disability" became final. *See, e.g., Tucson Steel,* 154 Ariz. at 554, 744 P.2d at 466. It, however, denies that this termination Notice finally determined that the April 1990 injury caused a scheduled disability or that it became final as to the Special Fund Division.

## 1. Preclusive Content Of Notice of Claim Status

 A Notice of Claim Status terminating temporary compensation does not determine whether a "permanent disability" is scheduled or unscheduled. Rather, it determines the permanent impairment resulting from an industrial injury. *E.g., Tucson Steel,* 154 Ariz. at 554–55, 744 P.2d at 466–67

(construing *Kucko v. Industrial Comm'n,* 116 Ariz. 530, 570 P.2d 217 (App.1977)). The somewhat ambiguous term "disability" actually means functional disability or impairment, not actual or presumed earning capacity disability. *Id.* 154 Ariz. at 555 n. 2, 744 P.2d at 467 n. 2. Although the face of a termination Notice does not specify the impairment determined to exist, the supporting medical report does identify the impairment determined to exist.[5]

 If a termination Notice becomes final, a Claimant is precluded from claiming that the industrial injury actually caused some other impairment. *Id.* at 555, 744 P.2d at 467. Preclusion also extends to the carrier or self-insured employer issuing the termination Notice. *See Church Of Jesus Christ Of Latter Day Saints v. Industrial Comm'n,* 150 Ariz. 495, 497–98, 724 P.2d 581, 583–84 (App.1986) (precluding self-insured employer from rescinding final termination Notice that closed claim with permanent impairment).

In the present case, the medical report supporting the Notice terminating the April 1990 claim identified only a left lower extremity impairment. Claimant allowed this Notice to become final. The Notice therefore finally determined that the April 1990 injury caused only a left lower extremity impairment.

## 2. Parties Precluded

Although the Special Fund Division concedes that the termination Notice became final as to Claimant and the Fund, it denies that it became final as to it. This position is based on its arguments that it was not a party defendant to the termination Notice and did not have notice of or a fair opportunity to contest the termination Notice. We address these arguments in turn.

In civil cases, preclusion applies only to parties to a prior determination or their privies. *E.g., Fremont Indem. Co. v. Industrial Comm'n,* 144 Ariz. 339, 342, 697 P.2d 1089, 1092 (1985). The supreme court, however,

---

**5.** In *Tucson Steel,* we recommended that the Commission modify the standard form termination Notice to avoid possible problems with the sufficiency of the disclosure of the impairment determined to exist. *Id.* at 555 n. 2, 744

P.2d at 467 n. 2. The Commission did not modify the standard form, but it did amend the applicable procedural rule to require disclosure of the supporting medical report upon request. *See* A.A.C. R4–13–118(B).

has concluded that "the rule that strangers to a judgment may not be bound thereby must yield in the workmen's compensation area." *Id.* at 345, 697 P.2d at 1095. Although the court denied preclusive effect to an *out-of-state* workers' compensation disability determination to which the *in-state* employer and carrier were strangers, it accorded the disability determination presumptive validity:

> We believe that by according a prior disability determination of another state presumptive validity, subject to rebuttal, all competing interests are accommodated: 1) the employer and carrier, strangers to the prior proceeding, are given the opportunity to challenge the findings made therein, and 2) the broad remedial purpose of our compensation law is effectuated.

*Id.*

The supreme court has not addressed the question of whether strangers to a final *in-state* notice or award are precluded from contesting issues determined by it. This court, however, has addressed this question. *See Pollard v. Industrial Comm'n,* 159 Ariz. 299, 767 P.2d 22 (App.1988). In *Pollard,* the Claimant suffered successive industrial injuries while working for the same employer, which had different compensation carriers at risk for the injuries. The first carrier closed the first injury claim with a shoulder impairment and a scheduled disability.[6] These notices became final. The second carrier subsequently closed the second injury claim with a knee impairment and a scheduled disability. Claimant protested this closure, and at the ensuing hearing, both the second carrier and the Special Fund Division[7] relied on *Fremont* to argue that they could contest the question of whether the first injury claim was correctly closed with a scheduled disability.[8]

*Pollard,* 159 Ariz. at 299–300, 767 P.2d at 22–23.

This court rejected the extension of *Fremont* to an *in-state* determination involving a common claimant and employer. *Id.* at 301, 767 P.2d at 24. We noted in particular that if *Fremont* applied to such determinations,

> the Special Fund [Division] would always be able to contest the prior determination as it would never be a party to that proceeding, and thus would be able to avoid the liability imposed by A.R.S. § 23–1065(B). In our opinion, this is contrary to the clear legislative intent by enacting this statute to relieve the financial burden imposed by the *Ronquillo* unscheduling process by sharing this burden.

*Id.*

▮ In the present case, the Special Fund Division is disputing the disability classification of the successive disability, not the previous disability. It urges us to distinguish *Pollard* for this reason, but we disagree that this is a difference in principle. A final determination in the claim at hand is no less final than a final determination in a prior claim. *See, e.g., Talley v. Industrial Comm'n,* 105 Ariz. 162, 166, 461 P.2d 83, 87 (1969) (precluding challenge to final "intermediate award" determining average monthly wage). Under *Pollard,* strangers to final *in-state* determinations involving a common Claimant and employer are precluded from contesting issues determined by them. Because the Claimant and employer in the present case are obviously identical in prior determinations involving a single claim, *Pollard* applies to these determinations.

The Special Fund Division alternatively argues that the termination Notice could not become final as to it because it was not a party defendant to and did not have a fair

---

6. A notice of scheduled disability, unlike a Form 107, is subject to protest and accordingly may become final. *See* A.R.S. § 23–947(B) (amended 1987).

7. The procedural history does not disclose how the Special Fund Division became involved in the disputed closure of the second injury claim. The opinion notes only that the "Special Fund Division of the Industrial Commission also submitted a memorandum on this issue, asserting an

interest in the resolution due to its potential liability pursuant to A.R.S. § 23–1065(B) (Amended 1980)." *Id.* at 300, 767 P.2d at 22.

8. Shortly after the first injury became stationary, this court concluded that a shoulder impairment is an unscheduled disability. *See Eggleston v. Industrial Comm'n,* 24 Ariz.App. 444, 445–47, 539 P.2d 918, 919–21 (1975) (shoulder impairment should be unscheduled disability).

opportunity to contest the termination Notice. We reject this argument for two reasons.

■ First, this argument simply revisits the policy determinations made in *Fremont* and *Pollard.* The general rule limiting issue preclusion to parties and privies "is premised upon preventing the inherent unfairness of binding a party to an issue determination he had no opportunity to contest." *Fremont,* 144 Ariz. at 342–43, 697 P.2d at 1092–93 (citing *Blonder–Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971)). In concluding that this general rule "must yield in the workmen's compensation area" and by precluding strangers from contesting *in-state* determinations involving a common Claimant and employer, the supreme court and this court have concluded that notice and an opportunity to be heard are not required to bind a party such as the Special Fund Division to a termination Notice.

■ Second, this argument erroneously assumes that the Special Fund Division must be given direct notice. To the contrary, the applicable statutes and procedural rules do not distinguish between divisions of the Commission. Carriers and self-insured employers must promptly report a termination of compensation *"to the commission."* A.R.S. § 23–1061(F) (emphasis added); *see also* A.A.C. R4–13–118(C) (termination Notice and supporting medical report "shall be sent *to the Commission "*) (emphasis added). Similarly, the apportionment statute requires carriers or self-insured employers to *"notify the commission* of its intent to claim reimbursement for an eligible claim under subsection B or C of this section...."* A.R.S. § 23–1065(D) (emphasis added).

In the present case, the Fund satisfied these statutory and procedural requirements. If the Claims Division of the Commission has not adopted procedures for notifying the Special Fund Division of the Commission of termination Notices for which apportionment has been claimed under subsection 23–

1065(B), the fault lies with the Commission, not the Fund. Similarly, the remedy for any needed corrective action or procedures lies with the Commission. Furthermore, as previously noted, *see* note 1, *supra,* if the Commission had timely issued its award for permanent disability and apportionment, the Special Fund Division would have received notice within the protest period of the termination Notice.

## C. Consistency

The Special Fund Division lastly argues that our conclusions concerning the Form 107 and the effect of Claimant's protest of the Commission's Interim Award, on one hand, and the preclusive effect of the termination Notice, on the other, are inconsistent. We disagree.

Assume, for example, that Claimant's second injury had caused an impairment of the hip instead of the knee. Although the Special Fund Division would be precluded from disputing the impairment resulting from the injury, it could dispute whether a hip impairment is a scheduled disability. *See Miller v. Industrial Comm'n,* 110 Ariz. 229, 231, 517 P.2d 91, 93 (1973) (classifying hip impairment as unscheduled disability). In contrast, a unilateral leg impairment is a scheduled disability. *See* A.R.S. § 23–1044(B)(15), (21). The difference between the present case and the assumed one is that the factual issue of impairment is dispositive of the claim for apportionment under subsection 23–1065(B) in the case of a unilateral leg impairment but not in the case of a hip impairment.[9]

## D. Conclusion

For these reasons, we conclude that the ALJ reached the right result for the wrong reason. We accordingly affirm the Award. *See, e.g., Salt River Project v. Industrial Comm'n,* 126 Ariz. 196, 200, 613 P.2d 860, 864 (App.1980) ("Hearing officers, like superior court judges, should be affirmed if they

9. The Special Fund Division also could have contested the existence or degree of Claimant's earning capacity disability but elected not to assess or contest her earning capacity independently.

reach the right legal result, even though for the wrong reason.").

The award is Affirmed.

TOCI and WEISBERG, JJ., concur.