**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 2 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HUNTER RANCH INC.,

      Plaintiff - Appellant,

vs.

ISABEL M. HUNTER, personal
representative of the estate of Leatha
M. Hunter,

      Defendant - Appellee.

No. 97-8004
(D.C. No. 96-CV-0143-B)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **KELLY**, and **HENRY**, Circuit Judges.

Plaintiff-Appellant Hunter Ranch Inc. appeals from a grant of summary

judgment denying preliminary injunctive and declaratory relief. Hunter Ranch

sought a declaration that a share transfer restriction in its by-laws applies to

Defendant-Appellee Isabel Hunter's sale of shares in a deceased shareholder's

estate. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm in part, but

for different reasons, vacate in part, and remand for proceedings consistent with

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this opinion.

## Background

Hunter Ranch is a closely held family corporation formed in Wyoming. Prior to Leatha Hunter's death in 1993, the shareholders were Leatha, her son Vernon Hunter, and Vernon and his ex-wife Isabel's three children, Elisa Hunter Bruce, Elana Hunter-McLean, and Leslie Hunter. According to Vernon and Isabel's 1985 divorce decree, Isabel had transferred all of her shares to Vernon. The decree also provided that if Isabel were to again acquire any shares in Hunter Ranch, by any means, she was to transfer them immediately to Vernon without consideration.

In 1989, the shareholders (with Isabel present and voting Leatha's shares under general power of attorney) unanimously adopted resolutions to amend the by-laws and implement a share transfer restriction. The restriction provides: "No shareholder may sell, assign or transfer all or any part of the shares owned by him or her without first obtaining the prior written consent of shareholders owning 51% of the issued and outstanding stock of the corporation." Aplt. App. at 91 (Hunter Ranch By-Laws). The existence of this restriction was noted on the face of all outstanding stock certificates, and typed in full on the back of each.

Leatha died testate in Arizona in 1993. Her will appointed Isabel personal representative and created a testamentary trust for the benefit of Isabel. In 1994,

when transfer of Leatha's shares into the testamentary trust was imminent, Vernon brought suit in Arizona state court arguing, among other things, that the transfer restriction applied to the transfer of the shares to the trustee. The Arizona courts, interpreting Wyoming law, held that general share transfer restrictions that fail to address the event of death do not apply to testamentary dispositions, and denied Vernon relief.

In November 1995, Isabel petitioned the Arizona probate court for approval to sell the shares to pay estate administrative expenses and to fund the trust. In April 1996, while the petition was pending, Isabel's counsel wrote Vernon's counsel, seeking either the appraised value of the shares at the date of Leatha's death ($546,000) or the benefits she expected under the will: a reasonable return on the stock and payment of last illness, funeral, and burial expenses. Otherwise, Isabel threatened to sell the shares to a "third person who will call for an audit of the ranch books and take whatever action the audit indicates." Aplt. App. at 214.

Following receipt of this letter, in May 1996, Hunter Ranch brought suit in Wyoming state court seeking (1) a declaration of the applicability of the share transfer restriction to the proposed sale, and (2) an injunction against the sale except in accordance with the terms of the restriction. At the time of filing, the shares were distributed as follows: Leatha's estate, 42,000 shares; Vernon, 42,600 shares; and each of the three children, 5,133 1/3 shares, for a total of

100,000 shares. Isabel removed the case to federal district court, which (1) apparently gave preclusive effect to the Arizona holding that the restriction does not apply to testamentary dispositions, and (2) held the proposed sale for the purpose of paying estate administrative expenses would be a testamentary disposition, so that the restriction did not apply. On appeal, Hunter Ranch argues that the district court erred in (1) giving any preclusive effect to the Arizona judgments because of lack of identity of parties and claims and (2) holding the proposed sale to pay administrative expenses would be a testamentary disposition. Isabel argues for affirmance based on the district court's analysis, and alternatively that the restriction is invalid as it is against public policy, not for a reasonable purpose, and manifestly unreasonable in its operation.

## Discussion

We review the grant of summary judgment de novo applying the same standard as the district court embodied in Rule 56(c). See Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir. 1995). Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant, but that party must identify sufficient evidence to require submission of the case to a trier of fact. See Fed. R. Civ. P.

56(e); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Aramburu v Boeing Co.</u>, 112 F.3d 1398, 1402 (10th Cir. 1997). If there is no genuine issue of material fact, we next determine whether the district court applied the relevant substantive law correctly. <u>See</u> <u>Hirase-Doi v. U.S. West Communications, Inc.</u>, 61 F.3d 777, 781 (10th Cir. 1995).

## A. Preclusion Doctrines

Hunter Ranch argues that the district court erred in giving claim preclusive effect to the Arizona judgments. Under the Full Faith and Credit Clause and implementing statutory provisions, federal courts give a state court judgment the same preclusive effect as would be given under the rendering state's law. <u>See</u> U.S. Const. art. IV, § 1; 28 U.S.C. § 1738; <u>Crocog Co. v. Reeves</u>, 992 F.2d 267, 269 (10th Cir. 1993). It is unclear precisely what effect the district court gave the Arizona judgments. The district court did not mention claim preclusion or res judicata, nor did it analyze the presence of the essential elements of any preclusion doctrine. The district court did, however, state that given the full faith and credit doctrine, it "must determine precisely what the Arizona court held and how it affects this action." Aplt. App. at 282. The district court observed that the Arizona courts held general share transfer restrictions do not apply to testamentary dispositions, and then applied this rule. At the same time, the

district court noted that if it were addressing the issue "de novo," it might have gone the other way. Id. at 283 n.1. Thus, the district court apparently gave the Arizona judgments preclusive effect.

Hunter Ranch argues that there is neither the requisite identity of parties nor identity of claims to give the Arizona judgments preclusive effect, and we agree. First, preclusion is only applicable to the same parties to the former adjudication or their privies. See Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971); Fremont Indem. Co. v. Industrial Comm'n, 697 P.2d 1089, 1092 (Ariz. 1985) (en banc); Restatement (Second) of Judgments § 34 (1982). In the absence of contrary authority, Arizona courts follow the Restatement of the Law. See Bank of America v. J. & S. Auto Repairs, 694 P.2d 246, 248 (Ariz. 1985) (en banc).

In the Arizona proceedings, the plaintiff was Vernon Hunter in his individual capacity. See Restatement (Second) of Judgments § 36(1). In these federal proceedings, the plaintiff is Hunter Ranch in its corporate capacity. Although a corporation may be precluded by judgments against a controlling shareholder, see Industrial Park Corp. v. U.S.I.F. Palo Verde Corp. 547 P.2d 56, 60-61 (Ariz. Ct. App. 1976); Restatement (Second) of Judgments § 59, cmt. (e), Vernon is a minority shareholder and only one of a three-member board of directors. Moreover, even in the case of a controlling shareholder, judgments

against him or her should not bind the corporation where preclusion would not protect the interests of other shareholders. See Restatement (Second) of Judgments § 59(3)(b). Due to this lack of identity of parties, no preclusive effect should have been given to the Arizona judgments.

Second, claim preclusion doctrine only bars relitigation of the same claim. See Chaney Bldg. Co. v. City of Tucson, 716 P.2d 28, 30 (Ariz. 1986) (en banc). The modern trend, as with the second Restatement's rules argued by Isabel, is to measure identity of claims under a transactional test. See 18 Charles A. Wright et al., Federal Practice and Procedure § 4407, at 62 (1981); Restatement (Second) of Judgments § 24. Under this test, a subsequent claim is precluded if it arises from a nucleus of operative facts common to a former claim. See Restatement (Second) of Judgments § 24, cmt. b. This is the case regardless of the number of substantive theories available to the plaintiff, the variant forms of relief flowing from those theories, any differences in the evidence needed to support them, and the number of rights invaded. See id., cmt. a. Arizona, however, continues to employ on this particular issue the first Restatement's "same evidence test." See Restatement of Judgments § 61 (1942). According to this test, even for a claim arising out the same transaction, if different or additional evidence is needed to prevail on the latter claim, it is not barred by res judicata. See Phoenix Newspapers, Inc. v. Department of Corrections, 934 P.2d 801, 804 (Ariz. Ct. App.

1997) (citing <u>Rouselle v. Jewett</u>, 421 P.2d 529, 532 (Ariz. 1966) (en banc)).

The claims litigated in the Arizona proceedings involved, among other things not relevant here, the imminent transfer of the shares into Leatha's testamentary trust. In the present proceedings, the claim involves the proposed sale by the personal representative of the shares to a third party. There is evidence essential to prevailing on the second claim that differs from the first. Indeed, the facts bearing on the second had not transpired at the time of the Arizona proceedings; the sale was not proposed until approximately twenty months later, and could reasonably have been unexpected by Hunter Ranch at the time of filing the Arizona suit. <u>See</u> <u>Rouselle</u>, 421 P.2d at 532; Restatement (Second) of Judgments § 24(2). Moreover, a claim which is not ripe at the time of the first complaint is not barred by the doctrine of res judicata. <u>See</u> <u>Owens v. City of Phoenix</u>, 884 P.2d 1100, 1108 (Ariz. Ct. App. 1994). Thus, in addition to the lack of identity of parties, claim preclusive effect need not have been given to the Arizona judgments due to the lack of identity of claims.

## B. Validity of the Restriction

Isabel argues that even if the share transfer restriction would otherwise apply to the proposed sale, it is invalid as it is against public policy, not for a reasonable purpose, and manifestly unreasonable in its operation. The issues of

the validity and applicability of the restriction turn on the purposes of the proposed sale (the planned uses of the revenue). Two purposes are proposed here: (1) to pay estate administrative expenses and (2) to fund the trust to benefit Isabel. See Aplt. App. at 14, ¶ 7 (Answer); id. at 15, ¶ 16. Although the purpose to fund the trust was before the district court, the district court only analyzed the sale for the purpose of paying administrative expenses. Given the district court's limited analysis only of a sale to pay administrative expenses, and its conclusion that a sale for this purpose was a testamentary disposition to which the restriction did not apply, the district court did not reach Isabel's arguments of invalidity. These holdings of the district court were unnecessary because the validity of the restriction is a threshold issue.

Isabel argues that the restriction is invalid because the relevant Wyoming statute withholds authorization from restrictions that are either against public policy or not for a reasonable purpose. See Wyo. Stat. Ann. § 17-16-627(c). With respect to the sale for the purpose of paying administrative expenses, we agree. The payment of administrative expenses is given priority over all else in the governing estate law scheme, even over the contrary intentions of the testator. See Ariz. Rev. Stat. § 14-3805. Application of the restriction to a sale to pay administrative expenses would be contrary to this legislative pronouncement of the public policy favoring payment of such expenses. The restriction is therefore

invalid as applied to a sale to pay estate administrative expenses.　See Wyo. Stat. Ann. § 17-16-627(c).

With respect to the remaining purpose, sale to fund the trust, Isabel argues the restriction is invalid as it is against public policy or not for a reasonable purpose. In the district court, Isabel submitted an affidavit attesting that, at the shareholder meeting when the restriction was adopted, the only discussed purpose was to hamper the liquidity of Leatha's shares to maintain her welfare eligibility. See Aplt. App. at 278, ¶ 3 (Isabel Hunter Aff.). Hunter Ranch, on the other hand, submitted affidavits by other attendees attesting that the purpose of the restriction was to protect the family corporation from outsiders.　See id. at 125, ¶ 5 (Elisa Hunter Bruce Aff.); id. at 126, ¶ 5 (Elana Hunter-McLean Aff.). Based on the submitted affidavits, we agree with Isabel a genuine issue of material fact exists regarding the reasonableness of the purpose of the restriction and its conformity with public policy. We therefore direct a trial on these issues.

Lastly, Isabel argues the restriction is manifestly unreasonable as interpreted by Hunter Ranch, and therefore invalid. Under Wyoming law, a restriction may only require shareholder approval if the requirement is "not manifestly unreasonable." Wyo. Stat. Ann. § 17-16-627 (d)(iii). Isabel's arguments that any application of the restriction would make the shares perpetually unalienable and worthless are exaggerated. She has not identified a

buyer and sought the other shareholders' consent, so she cannot be certain they will refuse. We consider Hunter Ranch's claims ripe under the Declaratory Judgment Act because attempted sale is sufficiently likely by Isabel under the present circumstances. We do not, however, view the prospect of the shareholders' refusal to consent as sufficiently certain to render the simple requirement that Isabel ask them manifestly unreasonable. Based on the current distribution of shares, she only needs either Vernon or any two of her three children to consent. Furthermore, she is not restricted at all from selling the shares at some value to a current shareholder, Vernon or her three children, or any combination of them.

Given our disposition of the issues properly before us, Hunter Ranch's remaining arguments are moot. We decline to address for the first time on appeal the parties' arguments, aside from those of validity, regarding a sale for the purpose of funding the trust. The district court did not reach, and consequently did not decide, either the issue of whether a sale to fund the trust would constitute a testamentary disposition, or whether the restriction, if valid, would apply to a sale for this purpose. If on remand the district court concludes the restriction is valid as applied to a sale to fund the trust, then it may address, unbound by the Arizona judgments, the issue of applicability to testamentary dispositions, and, for the first time, the issue of whether a sale to fund the trust is testamentary in

nature. We note, however, that a sale to fund the trust appears to be contrary to the testator's intent. <u>See</u> Aplt. App. at 105-06.

AFFIRMED IN PART, on different grounds, VACATED IN PART, and REMANDED for proceedings consistent with this opinion.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge